**Gertrude Brooks SCHUYT, Plaintiff,**

v.

**ROWE PRICE PRIME RESERVE FUND, INC., T. Rowe Price Associates, Inc., Carter O. Hoffman, Edward A. Taber III and George J. Collins, Defendants.**

**No. 80 Civ. 506 (RJW).**

United States District Court, S.D. New York.

Nov. 5, 1985.

Wolf Haldenstein Adler Freeman & Herz, Stull, Stull & Brody, New York City, for plaintiff; Daniel W. Krasner, Jeffrey G. Smith, Robert Stull, of counsel.

Pollack & Kaminsky, New York City, for defendants T. Rowe Price Associates, Inc., Carter O. Hoffman, Edward A. Taber III, and George J. Collins; Daniel A. Pollack, Martin I. Kaminsky, Edward T. McDermott, Frederick P. Schaffer, of counsel.

## OPINION

ROBERT J. WARD, District Judge.

This is an action brought pursuant to the Investment Company Act of 1940, as amended, 15 U.S.C. § 80a–1 et seq. ("ICA"). Defendants T. Rowe Price Associates, Inc. ("Price Associates"), Carter O. Hoffman, Edward A. Taber III and George J. Collins move pursuant to Rule 12(b)(6), Fed.R.

Civ.P., for an order dismissing Count III of the Third Amended Complaint. Defendants argue that Count III, which purports to assert a claim under § 20(a) of the ICA, 15 U.S.C. § 80a–20(a), fails to state a claim upon which relief can be granted in that § 36(b) of the ICA, 15 U.S.C. § 80a–35(b), provides the exclusive federal statutory remedy for a claim of excessive investment adviser fees. For the reasons hereinafter stated, defendants' motion is denied.

## BACKGROUND

The original complaint in this action was filed on January 25, 1980. In the original pleading, plaintiff alleged that she was a shareholder in the Rowe Price Prime Reserve Fund, Inc. (the "Fund"), a no load, diversified, open-end investment company incorporated and doing business in Maryland. The complaint further alleged that defendant Price Associates, also incorporated and doing business in Maryland, was serving as an investment adviser to the Fund under the terms of an investment advisory agreement dated May 1, 1976. Defendants Hoffman, Taber and Collins, the complaint alleged, were serving, respectively, as chairman of the board of directors of the Fund as well as vice president and director of Price Associates, president and director of the Fund in addition to vice president of Price Associates, and vice president and director of the Fund as well as vice president of Price Associates.

In the original complaint, brought derivatively on behalf of the Fund,[1] plaintiff alleged that the fees paid by the Fund to Price Associates for services rendered in 1978 had been excessive and unreasonable. This excessive compensation, plaintiff as-

---

**1.** In a recent case involving the applicability of the demand requirement of Rule 23.1, Fed.R. Civ.P., to actions brought by mutual fund shareholders to recover excessive fees under § 36(b) of the ICA, the Supreme Court held that a mutual company itself possesses neither an express nor implied right to sue under that statute section. *Daily Income Fund, Inc. v. Fox,* 464 U.S. 523, 104 S.Ct. 831, 838–42, 78 L.Ed.2d 645 (1984). Therefore, the Court concluded, the demand requirement of Rule 23.1, which applies only to derivative actions brought by shareholders to enforce a right of a corporation that the corporation itself has failed to enforce, does not apply to § 36(b) actions. *Id.* 104 S.Ct. at 842. The Court observed, nonetheless, that a suit brought by mutual fund shareholders under § 36(b) is "undeniably 'derivative' in the broad sense of that word" because "[t]he legislative history ... makes clear that Congress intended the perhaps unique 'right of a corporation' established by § 36(b) to be asserted by the company's security holders and not by the company itself." *Id.* 104 S.Ct. at 838 n. 11.

serted, constituted violations of §§ 1(b)(2), 10, 15, 36 and 37 of the ICA, as well as a breach of fiduciary duty under state law. Plaintiff therefore sought from defendants Price Associates, Hoffman, Taber and Collins an accounting and repayment of all excessive advisory fees paid by the Fund to Price Associates, as well as an injunction against Price Associates from "continuing its unlawful contract." Complaint at 8.

On July 14, 1980, the Court dismissed the original complaint with respect to all claims asserted under sections of the ICA other than § 36, and with respect to all pendent state law claims against the individual defendants. At the same time, the Court granted plaintiff leave to serve and file an amended complaint. On August 18, 1980, plaintiff filed an amended complaint asserting three claims against some or all of the original defendants: first, against Price Associates for excessive fees under § 36(b) of the ICA; second, against all defendants for breach of fiduciary duty under §§ 1(b)(2) and 15 of the ICA; and third, against all defendants for breach of fiduciary duty under state law. In a stipulation and order filed on January 23, 1981, plaintiff withdrew the second claim without prejudice.[2] The parties subsequently entered into a stipulation to the filing of a second amended complaint, which was signed by the Court and filed on March 2, 1981. A copy of the proposed amended pleading, annexed to the stipulation filed on March 2, 1981, indicated that the second amended pleading was to contain two claims, one against Price Associates for excessive fees under § 36(b) of the ICA, the other against all defendants for breach of a state law fiduciary duty.[3] The case

subsequently was placed on the suspense calendar by stipulation of the parties, and was restored to the active docket by stipulation on January 13, 1984. Some months later, plaintiff moved for leave to file a third amended complaint. In a memorandum endorsement dated June 28, 1984, the Court granted plaintiff leave to file an amended complaint asserting an additional claim of violation of the proxy rules. Plaintiff filed her Third Amended Complaint on July 2, 1984.

The amended pleading now before the Court asserts three claims for relief. Count I, asserted against Price Associates, raises a claim for excessive fees under § 36(b) of the ICA. Count II, brought against all defendants, is based on diversity of citizenship and alleges breach of fiduciary duty under state law. Count III, also asserted against all defendants, alleges violations of § 20(a) of the ICA and Rule 20a–1 promulgated thereunder, 17 C.F.R. § 270.20a–1, in connection with proxy statements disseminated to Fund shareholders to solicit their approval of proposed investment advisory agreements for 1980 and 1981 (the "1980 and 1981 Agreements").[4] In connection with the three claims asserted, plaintiff seeks various forms of monetary relief, including repayment to the Fund of excessive fees under Count I, payment to the Fund of defendants' profits and/or the Fund's damages under Counts II and III, and reimbursement to the Fund under Count III of all payments made to defendants under the 1980 and 1981 Agreements. In addition, plaintiff seeks under Count I to enjoin the Fund from payment of excessive fees to Price Associates, and seeks under all three

---

2. The stipulation further provided that plaintiff and her counsel would not assert the claims stated in Count II in any other action, nor encourage or assist others in asserting such claims in any other case.

3. The records of the Clerk of the Court do not indicate that a second amended complaint ever was filed as a separate court document. Any such oversight was rendered inconsequential, however, by the plaintiff's filing of a third amended complaint on July 2, 1984.

4. Section 20(a) prohibits any person from using a means of interstate commerce to solicit proxies or other authorizations from holders of registered investment company securities in violation of applicable rules and regulations of the Securities and Exchange Commission ("SEC"). *See infra* at 4. Rule 20a–1 makes applicable to such solicitation all rules and regulations promulgated by the SEC pursuant to § 14(a) of the Securities Exchange Act of 1934 ("SEA"), 15 U.S.C. § 78n.

counts a declaration that the 1980 and 1981 Agreements are void as a consequence of defendants' violations of statute and common law.

Defendants Price Associates, Hoffman, Taber and Collins now move to dismiss Count III of the Third Amended Complaint pursuant to Rule 12(b)(6), Fed.R.Civ.P. Defendants contend in the instant motion that, inasmuch as "the essence of [plaintiff's § 20(a)] claim is a charge of excessive fees," Defendants' Reply Memorandum at 3, § 36(b) of the ICA provides "the sole, exclusive and complete federal statutory remedy" for such an alleged wrong, Defendants' Memorandum at 1.

### DISCUSSION

The Investment Company Act of 1940 comprehends a broad regulatory scheme, and was enacted to address Congress' concern about "the potential for abuse inherent in the structure of investment companies." *Burks v. Lasker*, 441 U.S. 471, 480, 99 S.Ct. 1831, 1838, 60 L.Ed.2d 404 (1979). Section 20 of the ICA, which was part of the original statute enacted in 1940, provides in relevant part:

> It shall be unlawful for any person, by use of the mails or any means or instrumentality of interstate commerce or otherwise, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security of which a registered investment company is the issuer in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 80a–20(a). As both plaintiff and defendants acknowledge, the courts of this circuit have implied a private right of action under § 20(a) for shareholders of mutual funds who seek to redress violations of the proxy rules promulgated by the SEC. *See, e.g., Tannenbaum v. Zeller*, 552 F.2d 402 (2d Cir.1977); *Galfand v. Chestnutt Corp.*, 545 F.2d 807 (2d Cir.1976).

Section 36(b) of the ICA was added to the statute as part of the Investment Company Amendments Act of 1970, and provides in pertinent part:

> For the purposes of this subsection, the investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company, or by the security holders thereof, to such investment adviser or any affiliated person of such investment adviser. An action may be brought under this subsection by the Commission, or by a security holder of such registered investment company on behalf of such company, against such investment adviser, or any affiliated person of such investment adviser, or any other person enumerated in subsection (a) of this section who has a fiduciary duty concerning such compensation or payments, for breach of fiduciary duty in respect of such compensation or payments paid by such registered investment company or by the security holders thereof to such investment adviser or person. With respect to any such action the following provisions shall apply:
>
> (1) It shall not be necessary to allege or prove that any defendant engaged in personal misconduct, and the plaintiff shall have the burden of proving a breach of fiduciary duty.
>
> (2) In any such action approval by the board of directors of such investment company of such compensation or payments, or of contracts or other arrangements providing for such compensation or payments, and ratification or approval of such compensation or payments, or of contracts or other arrangements providing for such compensation or payments, by the shareholders of such investment company, shall be given such consideration by the court as is deemed appropriate under all the circumstances.
>
> (3) No such action shall be brought or maintained against any persons other than the recipient of such compensa-

tion or payments, and no damages or other relief shall be granted against any person other than the recipient of such compensation or payments. No award of damages shall be recoverable for any period prior to one year before the action was instituted. Any award of damages against such recipient shall be limited to the actual damages resulting from the breach of fiduciary duty and shall in no event exceed the amount of compensation or payments received from such investment company, or the security holders thereof, by such recipient.

. . . .

15 U.S.C. § 80a–35(b). In its report on the proposed 1970 amendments to the ICA, the Senate Committee on Banking and Currency explained that § 36(b) had been drafted in response to Congress' recognition that the original statutory framework "did not provide any mechanism by which the fairness of management contracts [between mutual funds and their investment advisers] could be tested in court." S.Rep. No. 91–184, 91st Cong., 2d Sess., *reprinted in 1970 U.S.Code Cong. & Ad.News* 4897, 4901. Congress' particular goal in adding § 36(b) was "to specify that the adviser has a fiduciary duty with respect to compensation for services or other payments paid by the fund or its shareholders to the advisers or to affiliated persons of the adviser." *Id.* at 4902.

In the context of an action brought by mutual fund shareholders against an investment adviser and its directors for breach of fiduciary duty under the ICA, the Second Circuit has observed in passing that § 36(b) may properly "constitute[ ] the exclusive remedy insofar as a private claim alleges solely that compensation of an adviser ... is so excessive in the sense of surpassing any reasonable relation to the services rendered that its payment is a breach of fiduciary duty." *Fogel v. Chestnutt,* 668 F.2d 100, 112 (2d Cir.1981), *cert. denied,* 459 U.S. 828, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982). Notwithstanding the circuit panel's *dictum* in *Fogel v. Chestnutt,* however, it is clear that at least in

some circumstances a claim under § 20(a) of the ICA, alleging material misstatements or omissions in a proxy statement distributed to mutual fund shareholders, may be joined with a claim for breach of fiduciary duty by an investment adviser with respect to its compensation for services under § 36(b). *See, e.g., Gartenberg v. Merrill Lynch Asset Mgt., Inc.,* 573 F.Supp. 1293 (S.D.N.Y.1983), *aff'd,* 740 F.2d 190 (2d Cir.1984) ("*Gartenberg II* "); *Galfand v. Chestnutt, supra; see also Meyer v. Oppenheimer Mgt. Corp.,* 764 F.2d 76, 81 (2d Cir.1985) (claim under § 20 of the ICA and § 14(a) of the SEA reinstated along with claim for excessive fees under § 36(b) of the ICA).

In the instant motion to dismiss, defendants contend that Count III of the Third Amended Complaint, which asserts a claim under § 20(a) for violation of the SEC's proxy rules, "is merely an excessive fee claim dressed in slightly different clothes." Defendants' Memorandum at 4. Therefore, under their reading of the Second Circuit's *dictum* in *Fogel v. Chestnutt* and of other decisions rendered by courts of this circuit on claims brought under the ICA, defendants argue that Count III of the amended pleading must fail because "§ 36(b) [already asserted as the ground for relief in Count I of the Third Amended Complaint] provides the complete and exclusive remedy under the [ICA] for a claim of excessive advisory fees." Defendants' Memorandum at 6. Because the Court accepts neither defendants' characterization of the amended claim at issue nor defendants' application of the relevant case law and legislative history to that claim, the Court concludes that defendants' motion must be denied.

### *Characterization of Plaintiff's § 20(a) Claim*

Defendants' reading of Count III as essentially a claim for excessive fees appears to arise from the fact that Count III rests in part on the same factual allegations that underlie plaintiff's § 36(b) claim stated in Count I. *See* Third Amended Complaint at

¶ 34. In addition, defendants note that the relief sought under Count III includes the return of all payments made to defendants under the 1980 and 1981 Agreements. *Id.* at 18; Defendants' Reply Memorandum at 2. Such relief, defendants suggest, is nothing more or less than the repayment of excessive fees, which plaintiff already demands in connection with her § 36(b) claim. *See* Third Amended Complaint at 17.

Defendants' reading of Count III, however, is incomplete. In that claim, plaintiff reiterates allegations made earlier in the amended complaint in connection with both her § 36(b) claim and state law claim for breach of fiduciary duty. In addition, however, plaintiff raises distinct allegations not previously asserted concerning omissions of material information in proxy statements circulated to Fund shareholders in 1980 and 1981. *See* Third Amended Complaint at ¶¶ 35–50. Furthermore, as to the relief sought under Count III, it must be noted that plaintiff seeks the return of *all* payments made to defendants under the 1980 and 1981 Agreements, not just those payments or portions of payments that a finder of fact might determine to be excessive. *See id.* at 18. In addition, plaintiff seeks an award of defendants' profits and damages to the Fund resulting from the alleged proxy violations, as well as a declaration that the 1980 and 1981 Agreements have been rendered void as a consequence of defendants' alleged § 20(a) violations. *Id.* at 18–19.

Count III of the Third Amended Complaint thus does not allege *solely* that advisory fees paid by the Fund to Price Associates were excessive. The § 20(a) claim raised in Count III advances distinct factual allegations of material nondisclosures in particular proxy statements, and seeks legal and equitable relief beyond the mere recapture of excessive advisory fees. Because it cannot fairly be characterized as a claim that alleges *solely* a breach of fiduciary duty arising from excessive compensation paid to an investment adviser, plaintiff's § 20(a) claim does not fall within the narrow category of claims that the Second Circuit panel in *Fogel v. Chestnutt, supra,*

thought might properly be brought only under § 36(b). *See* 668 F.2d at 112. Thus, even if this Court treats the circuit panel's *dictum* in *Fogel v. Chestnutt* as binding authority in the instant case, it does not mandate dismissal of the § 20(a) claim asserted here.

### Relevance of Gartenberg I and II

Nonetheless, defendants assert that Count III is not substantially different from the § 20(a) claim dismissed by the district court in *Gartenberg v. Merrill Lynch Asset Mgt., Inc.,* 528 F.Supp. 1038 (S.D.N.Y.1981), *aff'd,* 694 F.2d 923 (2d Cir. 1982), *cert. denied,* 461 U.S. 906, 103 S.Ct. 1877, 76 L.Ed.2d 808 (1983) (*"Gartenberg I"*). In view of the circuit court affirmance of Judge Pollack's dismissal of the § 20(a) claim raised in *Gartenberg I,* 694 F.2d at 933–34, defendants argue that the § 20(a) claim advanced in the instant case must likewise be dismissed. This Court reads *Gartenberg I* more narrowly than defendants, however, and in fact finds support in *Gartenberg II* for permitting plaintiff's § 20(a) claim to stand.

The sole claim alleged in the complaints in *Gartenberg I* was for breach of fiduciary duty under § 36(b) of the ICA. After the close of plaintiffs' case, however, one of the plaintiffs, Simone C. Andre, sought to "suggest" additional claims before the district court, including a claim that misleading and insufficient materials had been disseminated to shareholders of the mutual fund at issue in violation of § 20(a). 548 F.Supp. at 1065–66. Judge Pollack dismissed Andre's "belated" claims at the close of the case "as lacking merit, not asserted and not proved," but discussed them briefly "for the sake of completeness" in the text of his opinion. *Id.*

Characterizing Andre's § 20(a) claim as "the product of a fertile imagination," Judge Pollack found that the alleged omissions had not been material because mutual fund shareholders would not have changed their votes if the proxy statements sent to them had included additional "details of

costs." *Id.* at 1066–67; *see also TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976). "In any event," the district court observed, § 20(a) "[was] not intended to and [does] not establish a private right of action in the context of a claim such as here for recovery of compensation under Section 36(b)." 528 F.Supp. at 1067.

The Second Circuit Court of Appeals, affirming Judge Pollack's decision, noted that the only claim that had been raised in the complaint and tried to the district court had been the claim of excessive fees under § 36(b). The circuit panel therefore affirmed the dismissal of Andre's "belated post-trial" claims on the ground that they had not properly been presented to the district court for adjudication. 694 F.2d at 933–34. "In any event," the court of appeals agreed with the district court that plaintiff's additional claims were meritless. *Id.* at 934.

Both the district and circuit court opinions in *Gartenberg I* suggest that plaintiff Andre's § 20(a) claim was dismissed because it had not been raised properly in the district court and because, in any event, the omissions alleged had not been material. Judge Pollack's additional observations about the viability of claims asserted under other sections of the ICA "in the context of" a § 36(b) claim represent, at most, an alternative holding. Even if treated as a holding, however, Judge Pollack's comments must be viewed in the context of the case before him. The only claim plaintiffs had raised in the pleadings and attempted to prove at trial was one for excessive fees under § 36(b). At the close of plaintiffs' case, then, *Gartenberg I* involved only a claim of excessive fees. Under the Second Circuit's *dictum* in *Fogel v. Chestnutt, supra,* 668 F.2d at 112, Judge Pollack could have concluded that § 36(b) was the exclusive remedy available to plaintiffs insofar as the proof adduced at trial had related "solely" to the reasonableness or excessiveness of an investment adviser's fees. Indeed, Judge Pollack quoted the relevant language from the circuit court's opinion in *Fogel v. Chestnutt* to support his conclu-

sion that plaintiff Andre's "latterly constructed claims" must fail. *See* 528 F.Supp. at 1067.

This Court is further persuaded that Judge Pollack's "alternative holding" in *Gartenberg I* must be confined to the particular facts of that case by the district court's treatment of the § 20(a) claims asserted in *Gartenberg II.* In the second action, which the same plaintiffs commenced following the dismissal of their complaints in *Gartenberg I,* both Gartenberg and Andre asserted, *inter alia,* claims under §§ 20(a) and 36(b) of the ICA. *See Gartenberg II, supra,* 573 F.Supp. at 1296–97 & n. 1. In *Gartenberg II,* Judge Pollack struck Andre's § 20(a) claim as "having been found in the earlier litigation to be devoid of legal merit and as having been asserted in bad faith," and assessed Andre's counsel $5,000.00 for having reasserted that and other claims frivolously. *Id.* at 1297 n. 1. However, the Court dealt differently with Gartenberg's § 20(a) claim. Judge Pollack did not strike the claim as "devoid of legal merit," but allowed plaintiff to proceed with it to trial. In his written opinion in *Gartenberg II,* issued after a bench trial, Judge Pollack considered the merits of the material omissions plaintiff Gartenberg had alleged as they pertained to both his § 20(a) and § 36(b) claims. *See id.* at 1307.

The omissions from a proxy statement of which plaintiff Gartenberg complained in *Gartenberg II* involved in large part information about the investment adviser's expenses and the fact that those expenses had been declining as a percentage of revenue. 573 F.Supp. at 1307. Viewing the alleged omissions in light of his earlier finding in *Gartenberg I,* that mutual fund shareholders most likely would not have voted differently if certain proxy statements had contained additional information on costs, Judge Pollack concluded that Gartenberg's allegations lacked merit under *both* § 20(a) and § 36(b). *See id.* Significantly, Judge Pollack did not refer in *Gartenberg II* to his earlier statements in *Gartenberg I* concerning the availability of re-

lief under other sections of the ICA "in the context of a claim ... for recovery of compensation under Section 36(b)." 528 F.Supp. at 1067. Similarly, the Second Circuit's affirmance of the district court in *Gartenberg II* makes no reference to that portion of Judge Pollack's prior decision. *See* 740 F.2d at 194.

Judge Pollack's strikingly different treatment of the two § 20(a) claims raised in *Gartenberg II* strongly suggests that his rejection of Andre's § 20(a) claim in both *Gartenberg I* and *II* resulted from defects peculiar to that claim and not from a defect generic to all § 20(a) claims joined with a claim for excessive fees. This Court therefore rejects defendants' argument that *Gartenberg I* mandates dismissal of the § 20(a) claim asserted in this action. In contrast to the situation presented in *Gartenberg I*, the amended complaint in this case includes a separate claim for relief under § 20(a) based upon distinct factual allegations of material omissions in two proxy statements sent to Fund shareholders. Like plaintiff Gartenberg in *Gartenberg II*, plaintiff here complains that certain financial information was omitted from proxy statements sent to Fund shareholders in violation of the SEC's proxy rules. As the district court's opinion in *Gartenberg II* makes clear, the nondisclosure to shareholders of information concerning, for example, the calculation of an investment adviser's expenses, may be relevant to a court's appraisal both of the reasonableness of the adviser's fee under § 36(b) and of the adequacy of information disseminated to shareholders under § 20(a). However, as the opinion in *Gartenberg II* suggests, this potential for some overlap in proof should not bar a mutual fund shareholder from presenting evidence at trial on claims of both excessive fees and proxy rule violations.[5]

### *Legislative History of § 36(b)*

Contrary to defendants' arguments, the legislative history of § 36(b) does not militate in favor of limiting plaintiff to a claim under that section for excessive fees. As stated earlier, Congress' intent in adding § 36(b) to the ICA was to make clear that investment advisers have a separate fiduciary duty to mutual funds and to their shareholders with respect to their compensation for services. *See supra* at 173. The specific provisions of § 36(b) were designed to "provide a mechanism for court enforcement of this duty." S.Rep. No. 91–184, *supra, 1970 U.S.Code Cong. & Ad. News* at 4902. Congress' overall purpose in enacting § 36(b) therefore appears to have been to enhance and expand rather than restrict mutual fund shareholders' rights and remedies under the ICA.

The Supreme Court has characterized the statute section as conferring "a narrowly circumscribed right of action for damages against investment advisers to registered investment companies." *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 22–23 n. 13, 100 S.Ct. 242, 248–49, n. 13, 62 L.Ed.2d 146 (1979). Indeed, the Court recently held that the statute implies no

---

**5.** Another district court in this circuit, relying upon Judge Pollack's statements in *Gartenberg I*, has held that no private right of action exists under § 20(a) "where the alleged violation concerns excessive advisors fees." *Tarlov v. Paine Webber Cashfund, Inc.*, 559 F.Supp. 429, 439 (D.Conn.1983). As explained above, this Court concludes that Judge Pollack's alternative holding in *Gartenberg I* should be confined to the particular § 20(a) claim asserted by plaintiff Andre there and in *Gartenberg II*. To the extent the district court's holding in *Tarlov* may fairly be interpreted to apply to any allegation of material omissions in a proxy statement that could also be relevant to a claim of excessive fees under § 36(b), this Court respectfully takes a different view.

By holding here that plaintiff should have the opportunity to present evidence at trial on her claim of proxy rule violations, the Court of course makes no finding as to the strength or weakness of plaintiff's § 20(a) claim. Moreover, the Court finds it unnecessary at this time to reach plaintiff's contention that, if she were able to prove at trial that defendants had violated Rule 12b–1, 17 C.F.R. § 270.12b–1, she would be entitled to rescission of the 1980 and 1981 Agreements under § 47(b) of the ICA, 15 U.S.C. § 80a–46(b). *See* Plaintiff's Memorandum in Opposition at 17–19. The Court notes, however, that the Second Circuit recently expressed doubt as to whether a private right of action exists for any violation of Rule 12b–1. *See Meyer v. Oppenheimer Mgt. Corp., supra,* at 85.

private right of action by which a mutual fund itself may recover excessive fees from its investment adviser. *See Daily Income Fund, Inc. v. Fox, supra.* However, neither the express provisions of § 36(b), nor the legislative history of the Investment Company Amendments Act of 1970, suggests that by adding § 36(b), Congress intended implicitly to extinguish all private rights of action previously recognized for other breaches of fiduciary duty or other violations of the ICA. *See Fogel v. Chestnutt, supra,* 668 F.2d at 111–12; *Tannenbaum v. Zeller, supra,* 552 F.2d at 417; *cf. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982) (implied private right of action under Commodities Exchange Act held available to investors notwithstanding 1974 amendments to the Act, where legislative history of amendments indicated Congress' intent to supplement rather than supplant implied judicial remedies). Similarly, nothing in the statute or legislative history indicates that Congress intended to preclude a mutual fund shareholder from joining a § 36(b) claim for excessive fees with claims for breach of other fiduciary duties or for other distinct violations of the ICA.[6]

Particularly where, as here, the challenged claim involves alleged violations of the SEC's proxy rules, it would be imprudent and unrealistic to view § 36(b) as a substitute for the implied right of action previously recognized by the Second Circuit under § 20(a). Both the terms of the statute and the case law interpreting it demonstrate that § 36(b) was not designed to provide redress to mutual fund shareholders for material misstatements in or omissions from proxy statements. Section 36(b)(2) provides that a court reviewing a claim brought under that section may "give[ ] such consideration [to shareholder

approval of investment advisory agreements] as is deemed appropriate under all the circumstances." 15 U.S.C. § 80a–35(b)(2). However, as both the district and circuit court opinions in *Gartenberg I, supra,* make clear, the validity of shareholders' votes on a particular advisory agreement may well be accorded "no significant weight" under § 36(b) because "the Investment Company Act contemplates that the primary responsibility for ascertaining the most significant matters is laid on the [mutual fund] Trustees." *Gartenberg I, supra,* 528 F.Supp. at 1065; *see also* 694 F.2d at 933. Thus, if the mutual fund shareholder is to be afforded a meaningful remedy for violations of the proxy rules by the fund's managers, directors and/or advisers, it will not be by way of a claim for excessive fees under § 36(b), but must be through an implied right of action under § 20(a).

## CONCLUSION

The Court finds that Count III of the Third Amended Complaint raises independent allegations of proxy rule violations under § 20(a) of the Investment Company Act of 1940. Because the Court concludes that neither the statute nor relevant case law precludes plaintiff from joining such a claim with a claim for excessive fees under § 36(b) of the ICA, defendants' motion to dismiss Count III must be denied. The parties are directed to communicate with the Court within ten days of the date of this Opinion and Order concerning their readiness for trial.

It is so ordered.

---

**6.** The Court's consideration in the instant case is limited to the availability of a right of action under § 20(a) when brought in conjunction with a claim for excessive fees under § 36(b). As previously stated, the Court concludes that Count III of the Third Amended Complaint asserts a claim of proxy rule violations under § 20(a) that is distinct from the excessive fee claim stated in Count I. *See supra* at 174–75. The Court does not reach the question of whether, under other circumstances, a claim asserted under § 20(a) or another section of the ICA might not properly be dismissed because, for example, it functioned merely as a "bootstrap" to a claim for excessive fees under § 36(b).