Allen MERINE, on Behalf of PRUDEN-
TIAL–BACHE UTILITY FUND, INC.,
and on Behalf of Himself and Others
Similarly Situated, Plaintiff,

v.

PRUDENTIAL–BACHE UTILITY FUND,
INC.; Prudential Mutual Fund Manage-
ment, Inc.; Prudential Investment Cor-
poration; Prudential–Bache Securities,
Inc.; Lawrence C. McQuade, and Mi-
chael Downey, Defendants.

No. 93 Civ. 7065 (PKL).

United States District Court,
S.D. New York.

Aug. 5, 1994.

Wolf Haldenstein Adler Freeman & Herz, New York City, for Allen Merine (Daniel W. Krasner, Jeffrey G. Smith, and Jennifer A.N. White, Esq., of counsel).

Skadden, Arps, Slate, Meagher & Flom, New York City, for Prudential Mut. Fund Management, Inc.; Prudential Inv. Corp.; Prudential–Bache Securities, Inc.; Lawrence C. McQuade, and Michael Downey (William P. Frank and David A. Fleissig, Esq., of counsel).

Sullivan & Cromwell, New York City, for Prudential–Bache Utility Fund, Inc. (Richard Carlton and Richard Pepperman, of counsel).

### OPINION AND ORDER

LEISURE, District Judge:

This is an action brought by a mutual fund shareholder alleging violations of several provisions of the Investment Company Act of 1940 (the "ICA"), 15 U.S.C. §§ 80a–1 to –64 (1988 & Supp. III 1991), and common law breach of fiduciary duty. Defendants move for dismissal of two of plaintiff's four claims pursuant to FedR.Civ.P. 12(b)(1) and 12(b)(6). For the reasons stated below, the Court dismisses plaintiff's Fourth Claim, brought under § 20(a) of the ICA, 15 U.S.C. 80a–20(a) (1988), as time-barred. The Court also dismisses plaintiff's First Claim, brought under various other provisions of the ICA and state law, to the extent it seeks relief under the ICA and to the extent it seeks relief under state law for damages accruing prior to October 12, 1990.

### BACKGROUND

Defendant Prudential–Bache Utility Fund, Inc. (the "Fund") is a registered mutual fund, established in 1981, which invests in the securities of utility companies. Plaintiff Allen Merine is a shareholder in the Fund. In 1989, a proxy statement was distributed to Fund shareholders soliciting their approval of a plan (the "Distribution Plan") establishing certain distribution fees. The plan was approved at a shareholder meeting in 1990. Under this plan, Merine and others who purchased shares between 1981 and 1985 (the "Original Purchaser Class") pay higher service fees than certain other Fund shareholders.

### DISCUSSION

### I.  MERINE'S CLAIM UNDER § 20(a) OF THE ICA

Merine's Fourth Claim is that the 1989 proxy statement describing the proposed Distribution Plan was materially misleading in violation of § 20(a) of the ICA and Rule 20a–1 promulgated thereunder, 17 C.F.R. § 270.20a–1 (1993).[1] Defendants seek dismissal of Merine's § 20(a) claim on the grounds that it is time-barred.

■ Private causes of action under § 20(a) are implied rather than express. *Brown v. Bullock,* 194 F.Supp. 207, 230–234 (S.D.N.Y.), *aff'd,* 294 F.2d 415 (2d Cir.1961). The ICA, however, does contain two express causes of action with accompanying limitations periods: Section 36(a) of the ICA, 15 U.S.C. § 80a–35(a) (1988), permits the Securities and Exchange Commission (the "SEC") to bring an action for "breach of fiduciary duty involving personal misconduct in respect of any registered investment company" within five years; section 36(b), 15 U.S.C. § 80a–35(b) (1988),

---

1.  Section 20(a) of the ICA states:
    It shall be unlawful for any person, by use of the mails or any means or instrumentality of interstate commerce or otherwise, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security of which a registered investment company is the issuer in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
    15 U.S.C. § 80a–20(a) (1988).
    Rule 20a–1(a) provides that all Securities and Exchange Commission rules and regulations adopted pursuant to § 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a) (1988), apply to § 20(a) of the ICA. Rule 14a–9(a), di-

rected at false or misleading statements, provides:
    No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.
    17 C.F.R. § 240.14a–9(a) (1993).

permits a private right of action to recover for excessive fees paid to an "investment adviser of a registered investment company ... or any affiliated person of such investment adviser" for the period starting one year before such an action is instituted.

When a court must determine the applicable limitations period for a claim implied under a federal statute that also contains an express cause of action with its own limitations period, a court must first ascertain whether it would be appropriate to borrow this express limitations period. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 359, 111 S.Ct. 2773, 2780, 115 L.Ed.2d 321 (1991). In the present case, it is not appropriate to borrow one of the express limitations periods in § 36 of the ICA, because the focus of § 36 is not comparable to the focus of § 20(a). Section 20(a) prohibits the solicitation of proxies from investment company shareholders through the use of materially false or misleading statements. By contrast, § 36(a) addresses "personal misconduct" by investment company officers, directors, investment advisers and principal underwriters, and § 36(b) is a narrow provision concerning excessive fees, a problem distinct from that addressed by § 20(a). 15 U.S.C. § 80a–35; *see Schuyt v. Rowe Price Prime Reserve Fund,* 622 F.Supp. 169, 177 (S.D.N.Y.1985) (stating that

unlike § 20(a), § 36(b) does not provide redress for material misstatements in or omissions from proxy statements). Thus, since the protections of § 36 are not similar to those provided in § 20(a), the limitations periods applicable under § 36 do not indicate "how Congress would have balanced the policy considerations implicit in" choosing a limitations period for § 20(a). *Lampf,* 501 U.S. at 359, 111 S.Ct. at 2780.

Since the ICA does not provide a limitations period appropriate for private causes of action under § 20(a), the Court must determine whether a limitations period should be borrowed from a different federal source or from state law. Federal borrowing is appropriate " 'where (1) a federal rule ... clearly provides a closer analogy than state alternatives, and (2) the federal policies at stake and the practicalities of the litigation render the federal limitation "a significantly more appropriate vehicle for interstitial lawmaking." ' " *United Paperworkers Int'l Union Local 340 v. Specialty Paperboard, Inc.,* 999 F.2d 51, 53 (2d Cir.1993) (quoting *Phelan v. Local 305, United Ass'n of Journeymen,* 973 F.2d 1050, 1058 (2d Cir.1992) (quoting *DelCostello v. Brotherhood of Teamsters,* 462 U.S. 151, 172, 103 S.Ct. 2281, 2294, 76 L.Ed.2d 476 (1983)), *cert. denied,* —— U.S. ——, 113 S.Ct. 1415, 122 L.Ed.2d 785 (1993)).[2]

---

**2.** In *Lampf,* Justice Blackmun set forth a "hierarchical inquiry" for determining what statute of limitations is applicable to a federal cause of action for which Congress has not explicitly provided a limitations period. *Lampf,* 501 U.S. at 356, 111 S.Ct. at 2778–79. However, while Justice Blackmun garnered a five-Justice majority for most of his opinion in *Lampf,* Justice Scalia declined to join that portion setting forth a hierarchical test. *Id.* at 364–66, 111 S.Ct. at 2783 (Scalia, J., concurring in part and concurring in the judgment). Justice Blackmun's test, in any event, was dictum in light of the Court's determination that an appropriate statute of limitations could be found in another provision of the same statute containing the implied cause of action at issue. *See id.* at 359, 111 S.Ct. at 2780 ("When the statute of origin contains comparable express remedial provisions, the inquiry usually should be at an end.")

In *Kahn v. Kohlberg, Kravis, Roberts & Co.,* 970 F.2d 1030, 1033–39 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 494, 121 L.Ed.2d 432 (1992), the Court of Appeals for the Second Circuit applied Justice Blackmun's "hierarchical inquiry"

to a claim under the Investment Advisers Act of 1940, 15 U.S.C. § 80b–1 to –21 (1988 & Supp. III 1991). However, in two subsequent opinions, the Second Circuit has instead set forth and applied the test quoted above, which is drawn from a previous Supreme Court opinion, *DelCostello,* 462 U.S. at 172, 103 S.Ct. at 2294–95. *See Phelan,* 973 F.2d at 1058 (then Chief Judge Meskill writing for the three-judge panel, including Judge Newman and Judge Arcara of the Western District of New York); *United Paperworkers,* 999 F.2d at 53 (Judge Oakes writing for the three-judge panel, including Judges Winter and McLaughlin). This Court reads these decisions as an instruction to use the test set forth therein, rather than the test set forth by the *Lampf* plurality.

The *Phelan* and *Lampf* tests are largely similar, involving essentially the same considerations. The test set forth in *Lampf,* however, is "hierarchical." Thus, under the *Lampf* test, the threshold issue is whether or not the cause of action in question "tends in practice to 'encompass numerous and diverse topics and subtopics,' such that a single state limitations period may not be

■ The practicalities that the Court must consider are of two kinds. The first is whether the "statutory claim in question covers a multiplicity of types of actions, leading to the possible application of a number of different types of state statutes of limitations." *United Paperworkers*, 999 F.2d at 53 n. 6 (quoting *Ceres Partners v. Gel Assocs.*, 918 F.2d 349, 357 (2d Cir.1990)); *accord Lampf*, 501 U.S. at 357, 111 S.Ct. at 2779 (plurality portion of opinion) (noting that "[w]here a federal cause of action tends in practice to 'encompass numerous and diverse topics and subtopics,' such that a single state limitations period may not be consistently applied within a jurisdiction, ... the federal interests in predictability and judicial economy counsel the adoption of one source, or class of sources, for borrowing purposes.") (quoting *Wilson v. Garcia*, 471 U.S. 261, 273, 105 S.Ct. 1938, 1945, 85 L.Ed.2d 254 (1985)).

The second practical consideration in determining whether a uniform federal limitations period is desirable is whether the challenged action is multistate in nature such that, in the absence of such uniformity, the limitations periods of several states would typically be applicable to a single claim. *See Ceres*, 918 F.2d at 357. This consideration figured prominently in the Supreme Court's determination, in *Agency Holding Corp. v. Malley–Duff & Assocs.*, 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987), that RICO should be governed by a uniform federal limitations period:

> [T]he practicalities of RICO litigation present equally compelling reasons for federal pre-emption of otherwise available state statutes of limitations.... RICO cases commonly involve interstate transactions, and conceivably the statute of limitations of several States could govern any given RICO claim.... [T]he use of state statutes would present the danger of forum shopping and, at the very least, would 'virtually guarantee ... complex and expensive litigation over what should be a straightforward matter.'

consistently applied within a jurisdiction." *Id.* at 357, 111 S.Ct. at 2779. Presumably, if this threshold is not met, then consideration may not be given to other factors, such as whether a uniform federal period of limitations may be

*Id.* at 153–54, 107 S.Ct. at 2765 (quoting Report of the Ad Hoc Civil RICO Task Force of the ABA Section of Corporation, Banking and Business Law 392 (1985)).

Nowhere have the disadvantages of applying state limitations periods to multistate claims been more sorely felt than with respect to securities suits. This consideration played a prominent role in the pre-*Lampf* decisions of the Courts of Appeals for the Second, Third, and Seventh Circuits adopting uniform federal limitations periods for claims under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1988). *See Ceres*, 918 F.2d at 355 (noting that in one case the statutes of limitations of 26 states had been applied); *Short v. Belleville Shoe Mfg. Co.*, 908 F.2d 1385, 1389 (7th Cir.1990) ("From the perspective of practitioners ... the situation is a nightmare."); *In Re Data Access Sys. Sec. Litig.*, 843 F.2d 1537, 1549 (3d Cir.) (noting that "you simply should not have a different Securities Act limitations period for Rome, New York, and Athens, Georgia."), *cert. denied, Vitiello v. I. Kahlowsky*, 488 U.S. 849, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988).

■ Turning to the instant case, both types of practical considerations favor the selection of a uniform federal limitations period for suits under § 20(a) of the ICA. First, § 20(a) claims are potentially subject to numerous different types of state statutes of limitations. This is illustrated by the experience of courts with claims under § 14(a) of the Securities Exchange Act of 1934 (the "1934 Act"), 15 U.S.C. 78n(a) (1988). Like § 20(a) of the ICA, § 14(a) of the 1934 Act prohibits materially misleading statements in proxy statements and is in fact governed by the same regulations as § 20(a). *Krinsk v. Fund Asset Management, Inc.*, 875 F.2d 404, 413 (2d Cir.) (citing 17 C.F.R. § 270.20a–1(a) (1987) (incorporating SEC Rules governing § 14(a) of the 1934 Act)), *cert. denied*, 493 U.S. 919, 110 S.Ct. 281, 107 L.Ed.2d 261 (1989). Experience has demonstrated that

appropriate because the action is multistate in nature. The *Phelan* test, in contrast, appears to contemplate a simultaneous weighing of various considerations, the approach followed herein.

claims under § 14(a) of the 1934 Act may be characterized in a number of ways, including as claims for negligence,[3] fraud,[4] and breach of fiduciary duty.[5] There can be little doubt that claims under § 20(a) of the ICA could also be subject to a similar diversity of characterizations.

Second, § 20(a) cases, like other securities cases, will commonly involve claims brought by investors in numerous states, as is illustrated by the fact that the plaintiff in this case seeks to bring a class action. Accordingly, in the absence of a uniform federal limitations period, the limitations periods of numerous states will often be applicable, causing substantial complexity and expense.

Thus, practical considerations plainly weigh in favor of a uniform federal limitations period. The Court must therefore turn to the question of whether "a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes." *Ceres*, 918 F.2d at 357 (quoting *Reed v. United Transp. Union*, 488 U.S. 319, 324, 109 S.Ct. 621, 625, 102 L.Ed.2d 665 (1989)). Such an analogy presents itself in § 14(a) of the 1934 Act. Although the 1934 Act imposes no express limitations period on claims under § 14(a), it is well established that the one-year/three-year limitations period governing claims under §§ 9 and 18 of the 1934 Act, 15 U.S.C. §§ 78i and 78r (1988 & Supp. V 1993), also applies to claims under § 14(a).[6] *See Westinghouse Elec. Corp. v. Franklin*, 993 F.2d 349, 353–54 (3rd Cir.1993); *see also Ceres*, 918 F.2d at 353 (one-year/three year period pertains to suits under § 14).

■ The Court recognizes that there are limits to the force of the § 14(a) analogy.

The most compelling case for borrowing a federal limitations period occurs when a provision of the same statute giving rise to the cause of action in question contains an express limitations period, which was the situation in *Lampf.* By contrast, § 14(a) is not in the same statute as § 20(a), and the limitations period for § 14(a) is not express but rather has been borrowed from §§ 9(e) and 18(c) of the 1934 Act, 15 U.S.C. § 78i(e) and § 78r(c) (1988). Thus, the Court is in effect borrowing a limitations period not from § 14(a), but rather from §§ 9(e) and 18(c). The very same rationale, however, which is used for applying the §§ 9(e) and 18(c) limitations period to § 14(a) also justifies using that limitations period for § 20(a). This rationale is that, like § 14(a), the causes of action for which Congress has explicitly provided a one-year/three-year statute of limitations were all "designed to protect investors and to ensure their ability to make educated decisions regarding their investments, educated decisions based on accurate and complete information." *Westinghouse*, 993 F.2d at 353. It is clear that § 20(a), like § 14(a), also shares this purpose, and it is therefore equally appropriate to borrow the one-year/three-year scheme for § 20(a) claims. Accordingly, in light of both the practical considerations favoring a uniform federal limitations period and the availability of an appropriate federal source from which to borrow such a limitations period, the Court concludes that § 20(a) claims should be governed by the one-year/three-year scheme.

Turning, then, to Merine's § 20(a) cause of action, it is time-barred because his complaint was filed more than three years after

---

**3.** *See Wilson v. Great American Indus.*, 855 F.2d 987, 995 (2d Cir.1988) ("Liability can be imposed [under § 14(a)] for negligently drafting a proxy statement"); *Gerstle v. Gamble–Skogmo, Inc.*, 478 F.2d 1281, 1298–1301 (2d Cir.1973) (noting that "the scope of the rulemaking authority granted under section 14(a) is broad," and holding that plaintiffs bringing § 14(a) claim were not required to show scienter with regard to the drafting of a misleading proxy statement); *Gould v. American–Hawaiian S.S. Co.*, 535 F.2d 761, 777–778 (3d Cir.1976) (same); *Eliasen v. Hamilton*, 1987 WL 7815, *9 (N.D.Ill.1987) (holding that facts making out a § 14(a) claim also made out a cause of action in negligence).

**4.** *Roberts v. Magnetic Metals Co.*, 611 F.2d 450, 453 (3d Cir.1979), *overruled on other grounds, In Re Data Access Sys.*, 843 F.2d 1537 (3d Cir. 1988).

**5.** *Id.*

**6.** Section 9(e) of the 1934 Act states: "No action shall be maintained to enforce any liability created under this section, unless brought within one year after the discovery of the facts constituting the violation and within three years after such violation." 15 U.S.C. § 78i(e) (1988).

the dissemination of the 1989 proxy statement.

## II. MERINE'S "DISPARATE TREATMENT" CLAIM UNDER THE ICA AND STATE LAW

Merine's First Claim is that by charging him and other Original Purchaser Class shareholders higher fees than other shareholders, the Fund and the two principal directors of the Fund (the "Inside Directors") violated §§ 1(b)(2), 15, 17(h) and 17(i) of the ICA [7], 15 U.S.C. §§ 80a–1(b)(2), 80a–15, 80a– 17(h), and 80a–17(i) (1988), and are also liable for breach of fiduciary duty under New York law. Defendants contend that Merine has failed to state a claim under the ICA, and that his state law claim should be dismissed as time-barred and for lack of subject matter jurisdiction.

The exclusive remedy provided by the ICA for payment of excessive service fees from a mutual fund is § 36(b) of the ICA, the provision under which Merine has brought two other claims in this action.[8] *See*

---

**7.** Section 1(b)(2) of the ICA is part of the Act's declaration of policy. It states that the "national public interest and the interest of investors are adversely affected" when investments companies are managed in the interests of the directors or officers thereof, "rather than in the interest of all classes of such companies' security holders." 15 U.S.C. § 80a–1(b)(2) (1988).

Section 15 of the ICA is concerned with regulation of the contracts of investment advisers and underwriters. Section 15(a) provides, for example, that no one may serve as investment adviser to a fund "except pursuant to a written contract" that "precisely describes all compensation to be paid thereunder." 15 U.S.C. § 80a–15(a) (1988).

Sections 17(h) and 17(i) of the ICA bar the inclusion of exculpatory clauses in the organizational documents of a registered investment company and in such a company's contracts with investment advisers and underwriters. *See* 15 U.S.C. § 80a–17(h) (1988).

**8.** Section 36(b) was added to the ICA as part of the Investment Company Amendments Act of 1970, Pub.L. No. 91–547, 84 Stat. 1413 (codified in scattered sections of 15 U.S.C.), the enactment of which followed "a period of explosive growth in the investment company industry." *Krinsk v. Fund Asset Management, Inc.*, 654 F.Supp. 1227, 1231 (S.D.N.Y.1987), *aff'd*, 875 F.2d 404 (2d Cir.1989). Whereas federal courts had previously implied a private right of action to recover excessive mutual fund service fees, *see, e.g., Brown v. Bullock*, 194 F.Supp. 207 (S.D.N.Y.), *aff'd*, 294 F.2d 415 (2d Cir.1961), Congress provided an explicit private right of action in § 36(b). The subsection provides:

(b) For the purposes of this subsection, the investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company, or by the security holders thereof, to such investment adviser or any affiliated person of such investment adviser. An action may be brought under this subsection by the [Securities and Exchange] Commission, or by a security holder of such registered investment company on behalf of such company, against such investment adviser, or any affiliated person of such investment adviser, or any other person enumerated in subsection (a) of this section [officer of registered investment company, director, member of any advisory board, depositor, principal underwriter] who has a fiduciary duty concerning such compensation or payments, for breach of fiduciary duty in respect of such compensation or payments paid by such registered investment company or by the security holders thereof to such investment adviser or person. With respect to any such action the following provisions shall apply:

(1) It shall not be necessary to allege or prove that any defendant engaged in personal misconduct, and the plaintiff shall have the burden of proving a breach of fiduciary duty.

(2) In any such action approval by the board of directors of such investment company of such compensation or payments, or of contracts or other arrangements providing for such compensation or payments, and ratification or approval of such compensation or payments, or of contracts or other arrangements providing for such compensation or payments, by the shareholders of such investment company, shall be given such consideration by the court as is deemed appropriate under all the circumstances.

(3) No such action shall be brought or maintained against any person other than the recipient of such compensation or payments, and no damages or other relief shall be granted against any person other than the recipient of such compensation or payments. No award of damages shall be recoverable for any period prior to one year before the action was instituted. Any award of damages against such recipient shall be limited to the actual damages resulting from the breach of fiduciary duty and shall in no event exceed the amount of compensation or payments received from such investment company, or the security holders thereof, by such recipient.

(4) This subsection shall not apply to compensation or payments made in connection with transactions subject to section 17 of this title [§ 17 of the ICA, 15 U.S.C. § 80a–17 (1988)], or rules, regulations, or orders thereunder, or to sales loans for the acquisition of any security issued by a registered investment company.

*Krinsk,* 875 F.2d at 413 (2d Cir.1989). Merine contends that he has nonetheless properly stated a claim under §§ 1(b)(2), 15, 17(h) and 17(i) of the ICA because his claim is premised on a right to be free from "disparate treatment" in the assessment of fees rather than excessive fees. Plaintiff's Memorandum of Law in Opposition to Defendants' Motion, dated April 13, 1994, at 12–16.

The Court finds Merine's argument unpersuasive. Assuming, *arguendo,* that Merine has a right under the ICA to be free from disparate treatment in the assessment of fees, his sole remedy exists under § 36(b). Merine's claim, in essence, is that the fees he is charged are excessive because they are disproportionate to fees charged other shareholders. This is simply a variation on a claim for "excessive fees" under § 36(b). No other provision of the ICA creates an independent basis for such a claim. Permitting Merine to bring this claim under a different provision of the ICA would merely allow him to circumvent one of the specific procedural limitations Congress enacted as part of § 36(b): that excessive fees may not be recovered for any period prior to one year before the commencement of a private action. *See* 15 U.S.C. § 80a–35(b)(3) (1988); *Krinsk,* 875 F.2d at 413. Such circumvention would fly in the face of "Congress's carefully limited scheme of legislation in this area." *Tarlov v. Paine Webber Cashfund,* 559 F.Supp. 429, 436 (D.Conn.1983). Accordingly, the Court concludes that § 36(b) provides Merine's sole ICA remedy for excessive service fees, and that his first claim for relief therefore fails to state a claim under the ICA.[9]

■ As stated above, defendants also seek dismissal of the state law component of Merine's first claim on subject matter jurisdiction and statute of limitations grounds. De-

fendants contend that in light of Merine's failure to make out federal claims against the Fund and the Inside Directors, Merine's state law breach of fiduciary duty claim against these defendants should be dismissed for lack of supplemental jurisdiction. This argument is without merit. Merine's claims against the Fund and the Inside Directors clearly arise out of the same set of operative facts as do his federal claims against the other defendants under § 36(b) of the ICA. Accordingly, this Court has supplemental jurisdiction over the state claims under 28 U.S.C. § 1367 (Supp. III 1991). *See, e.g., IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1059 (2d Cir.1993) (exercising supplemental jurisdiction over state claims in connection with a pension fund because they arose out of the same asset sale purchase which produced federal ERISA claim.) Moreover, presuming that this Court has the discretion to refrain from exercising such jurisdiction, defendants have provided no compelling reason for doing so.

■ With regard to the appropriate limitations period for Merine's state law claim, New York law provides that "[a]n action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued" if, as here, the action is brought by a non-resident. N.Y.Civ.Prac.L. & R. 202 (McKinney 1990). The purpose of this borrowing statute is to protect resident defendants and to discourage forum shopping. *Avagliano v. Sumitomo Shoji America, Inc.,* 614 F.Supp. 1397, 1404 (S.D.N.Y.1985) (citing *Stafford v. International Harvester Co.,* 668 F.2d 142, 151 (2d

---

(5) Any action pursuant to this subsection may be brought only in an appropriate district court of the United States.

(6) No finding by a court with respect to a breach of fiduciary duty under this subsection shall be made a basis (A) for a finding of a violation of this title for the purposes of sections 9 and 49 of this title [15 U.S.C. §§ 80a–9 and 80a–48 (1988 & Supp. III 1991)], section 15 of the Securities Exchange Act of 1934 [15 U.S.C. § 78*o* (1988 & Supp. V 1993)], or section 203 of title II of this Act [15 U.S.C. § 80b–

3 (1988 & Supp. III 1991)], or (B) for an injunction to prohibit any person from serving in any of the capacities enumerated in subsection (a) of this action.

15 U.S.C. § 80a–35(b) (1988).

9. Defendants also seek dismissal of the ICA component of Merine's first claim on the grounds that it is time-barred. The Court need not reach this limitations argument in light of the Court's conclusion that § 36(b) provides Merine's exclusive remedy for his disparate treatment claim.

Cir.1981)), *recons. denied, mot. granted,* 107 F.R.D. 748 (S.D.N.Y.1985).

■ Accordingly, to determine what statute of limitations applies, the Court must determine where the cause of action accrued for purposes of the borrowing statute. Courts in New York have used two alternative methods for ascertaining where a cause of action accrued. *Avagliano,* 614 F.Supp. at 1404. The first is the traditional place-of-injury approach, under which the cause of action accrues where the injury occurred. The second is the newer conflicts-of-law approach, whereby a court weighs the "contacts" and "interests" of the states involved. The New York Court of Appeals has not yet clearly addressed the question of which approach it would adopt, and the Second Circuit has held that in the absence of such a definitive ruling, it is " 'most appropriate for a federal court to take a conservative position and apply the traditional place[-]of[-]injury test.' " *Id.* at 1404–05 (quoting *Stafford,* 668 F.2d at 149); *see also Ceres,* 918 F.2d at 353.

[12] Under the place-of-injury test, if the injury alleged is economic in nature, then the cause of action accrues where the economic impact of the defendant's alleged conduct is felt. *Id.* at 1405 (citing *Industrial Consultants v. H.S. Equities,* 646 F.2d 746, 747 (2d Cir.), *cert. denied,* 454 U.S. 838, 102 S.Ct. 145, 70 L.Ed.2d 120 (1981)). Barring "unusual circumstances," which do not exist in this case, the economic impact is said to be felt in the state of plaintiff's residence. *See Block v. First Blood Assocs.,* 988 F.2d 344, 349 (2d Cir.1993) (citing *Ceres,* 918 F.2d at 353); *Farley v. Baird, Patrick & Co.,* 750 F.Supp. 1209, 1215 (S.D.N.Y.1990). The Court finds, therefore, that the instant claim accrued in Maryland, Merine's residence. Accordingly, for Merine's state claim to be timely, it must have been filed within both the applicable Maryland and New York limitations periods.

■ Under the operative Maryland statute of limitations, a breach of fiduciary duty action must be filed within three years

from the date it accrues. *See Resolution Trust Corp. v. Hecht,* 833 F.Supp. 529, 530 (D.Md.1993) (citing Md.Code Ann., Cts. and Jud.Proc. § 5–101 (1993)). An action is said to have accrued when a prospective claimant discovered or reasonably should have discovered the alleged wrong. *Poffenberger v. Risser,* 431 A.2d 677, 680 (Md.1981). Where a fiduciary duty or relationship exists between plaintiff and defendant, plaintiff is held to a reduced standard of diligence in discovering the wrong. *James v. Weisheit,* 279 Md. 41, 367 A.2d 482, 485 (1977)

■ Where, as here, a statute of limitations challenge is raised pursuant to Fed. R.Civ.P. 12(b)(6), the motion may only be granted "when the allegations of the complaint make clear that the claim is barred by the limitations period." *Eickhorst v. E.F. Hutton Group,* 763 F.Supp. 1196, 1202 (S.D.N.Y.1990). In the instant case, Merine's allegations provide no basis for concluding that he discovered or should have discovered the breach of fiduciary duty alleged in this action before October 12, 1990, three years prior to his filing this claim.[10] While it could be argued that Merine should have discovered his breach of fiduciary duty claim when he received the 1989 proxy statement, the Court does not find this argument conclusive on the present record, particularly in light of Maryland's reduced standard of diligence where a fiduciary duty exists. Accordingly, the Court does not find Merine's claim barred under the applicable Maryland statute of limitations. *Cf. Vassilatos v. Ceram Tech Int'l,* [1993 Transfer Binder] Fed. Sec.L.Rep. (CCH) ¶ 97,603, 1993 WL 177780 (S.D.N.Y.1993) (Leisure, J.) (holding that Court was "not able to find notice as a matter of law based on the allegations of the complaint," and that dismissal of plaintiff's claims as time-barred before discovery would be "premature.")

■ Under the New York borrowing statute, the Court must also examine the applicable New York statute of limitations.

---

**10.** Merine was under no obligation under Maryland law to state in his complaint when he discovered the alleged breach. "Generally, the party raising the statute of limitations defense has the burden of proving a time of accrual that makes the filing of the action untimely or barred by limitations." *Hecht v. Resolution Trust Corp.,* 333 Md. 324, 635 A.2d 394, 406 (1994).

Under New York law, the limitations period for a breach of fiduciary duty claim "'depends on the substantive remedy which the plaintiff seeks.'" *Geren v. Quantum Chem. Corp.*, 832 F.Supp. 728, 735 (S.D.N.Y.1993) (quoting *Loengard v. Santa Fe Indus.*, 70 N.Y.2d 262, 266, 514 N.E.2d 113, 115, 519 N.Y.S.2d 801, 803 (1987)). A plaintiff's request for legal relief for a breach of fiduciary duty is governed by the three-year statute of limitations applicable to actions to recover damages for injury to property. *Id.; see also* N.Y.Civ.Prac.L. & R. § 214(4) (McKinney 1990). A request for equitable relief is governed by the six-year statute of limitations applicable to actions for which no limitations period is specifically prescribed by law. *Geren,* 832 F.Supp. at 735; *see also* N.Y.Civ.Prac.L. & R. § 213(1) (McKinney 1990).

▮ Merine seeks both legal and equitable relief. He seeks to recover as damages the allegedly excessive distribution fees paid by the Original Purchaser Class, and he seeks injunctive relief requiring defendants to give each member of the Original Purchaser Class the opportunity to exchange his shares that are assessed smaller fees. Complaint at ¶¶ 85–86. The Court concludes that the six-year limitations period of § 213(1) governs Merine's request for a share exchange, but that the three-year limitations period of § 214(4) governs his request for damages. *See Kearney v. Atlantic Cement Co.,* 33 A.D.2d 848, 849, 306 N.Y.S.2d 45, 47 (3d Dept.1969) (holding that plaintiff's request to enjoin a nuisance was not time-barred, but that his request for damages arising out of the nuisance was governed by the three-year limitation period of § 214(4)); Joseph M. McLaughlin, *Practice Commentaries,* in 7B McKinney's Consolidated Laws of New York Annotated 445 (West 1990) ("It seems clear that if the period of limitations on the action for damages has expired, a plaintiff should not be permitted to recover those damages merely by demanding them as an incident to his request for an injunction.") (citing *Kearney* ).

▮ Defendants argue that since under § 214(4) an action to recover damages for injury to property "must be commenced within three years" of the injury to be timely, and the Distribution Plan was approved more than three years prior to the filing of this action, Merine's action for damages is time-barred. Under the continuing wrong doctrine, however, a new cause of action arose each time defendants charged excessive fees. *See Delemos v. White,* 173 A.D.2d 353, 354, 569 N.Y.S.2d 723, 724 (1st Dept.1991) (in breach of fiduciary duty case, finding that "a new cause of action accrued each time defendant collected the rents and kept them to himself.") Merine's action is thus timely as to excessive fees charged subsequent to October 12, 1990, three years prior to the filing of this suit. *See id.* Accordingly, the Court grants defendants' motions to dismiss the state claim only with respect to Merine's claim for recovery of fees charged prior to October 12, 1990.

## CONCLUSION

For the reasons stated above, Merine's Fourth Claim under § 20(a) of the ICA is dismissed in its entirety, and his First Claim is dismissed to the extent it seeks relief under the ICA and to the extent it seeks relief under state law for damages accruing prior to October 12, 1990. The parties are hereby advised to appear for a pre-trial status conference on September 23, 1994, at 2:00 p.m. in Courtroom 312.

**SO ORDERED.**