Jack GREEN, Individually and as Trustee, Lawrence P. Belden, Trustee, and Stanley Simon, Trustee, Plaintiffs,

v.

FUND ASSET MANAGEMENT, L.P., Merrill Lynch Asset Management, L.P., Merrill Lynch & Co., Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Princeton Services, Inc., Arthur Zeikel, Terry K. Glenn, Munienhanced Fund, Inc., Munivest Fund II, Inc., Muniyield Fund, Inc., Muniyield Insured Fund, Inc., Muniyield Insured Fund II, Inc., Muniyield Quality Fund, Inc., and Muniyield Quality Fund II, Inc., Defendants.

No. Civ. 97–3502 DRD.

United States District Court,
D. New Jersey.

Feb. 23, 1998.

Bruce I. Goldstein, Saiber, Schlesinger, Satz & Goldstein, Newark, NJ, Robert E. Sullivan, Beverly Gudenowski, Sullivan, Weinstein & McQuay, P.C., Boston, MA, Laurence M. Johnson, Kirsten Nelson Callahan, Mahoney, Hawkes & Goldings, LLP, Boston, MA, for Jack Green, individually and as Trustee, Lawrence P. Belden, Trustee, and Stanley Simon, Trustee.

Paul A. Rowe, Alan S. Naar, Greenbaum, Rowe, Smith, Ravin, Davis & Himmel LLP, Woodbridge, NJ, James N. Benedict, Mark Holland, James F. Moyle, Sean M. Murphy, Kelley P. Swift, Rogers & Wells, New York City, for Fund Asset Management, L.P., Merrill Lynch Asset Management, L.P., Merrill Lynch & Co., Inc., Merrill Lynch, Pierce, Fenner & Smith Inc., Princeton Services, Inc., Arthur Zeikel, Terry K. Glenn.

Robert J. Del Tufo, Skadden, Arps, Slate, Meagher & Flom LLP, Newark, NJ, Thomas J. Dougherty, James R. Carroll, Skadden, Arps, Slate, Meagher & Flom LLP, Boston, MA, for MuniEnhanced Fund, Inc., MuniVest Fund II, Inc., MuniYield Fund, Inc., MuniYield Insured Fund, Inc., MuniYield Insured Fund II, Inc., MuniYield Quality Fund, Inc., MuniYield Quality Fund II, Inc.

## OPINION

DEBEVOISE, Senior District Judge.

The complaint in this action charges that defendants have violated and are violating Sections 8(a), 34(b) and 36(a) and (b) of the Investment Company Act of 1940 and are liable to plaintiffs under state law. Defendants have moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons set forth below, the claims asserted under Sections 8(a), 34(b) and 36(a) of the Act will be dismissed, and in all other respects defendants' motion will be denied.

## BACKGROUND

Plaintiffs are shareholders in seven investment companies which are the named defendants in this action, MuniEnhanced Fund, Inc., MuniVest Fund II, Inc., MuniYield Fund, Inc., MuniYield Insured Fund, Inc., MuniYield Insured Fund II, Inc., MuniYield Quality Fund, Inc., and MuniYield Quality Fund II, Inc. (the "Funds"). Plaintiffs invested a total of more than $44,000.00 in the Funds between May 22 and October 18, 1995. Jack Green has brought suit individually and in his capacity as a trustee of seven trusts that invested in the Funds. The other two plaintiffs, Lawrence P. Belden and Stanley Simon, sue solely as trustees of trusts that invested in the Funds.[1]

The Funds are closed-end investment companies that are registered with the Securities and Exchange Commission ("SEC") under the Federal securities laws and publicly traded on the New York Stock Exchange. All of the Funds are incorporated under the laws of Maryland and have their principal places of business in Plainsboro, New Jersey. The Funds' goal is to provide shareholders with income exempt from Federal income taxes by investing in long-term tax-exempt municipal bonds. The Funds attempt to increase the yields paid to their common stockholders through the use of leverage. The Funds leverage by issuing shares of preferred stock that pay dividends based upon prevailing short-term interest rates and investing the proceeds from the sales of the preferred stock in longer-term obligations that, under normal market conditions, pay higher rates. The spread between the short-term rates paid by the Funds to holders of the preferred stock and the longer-term rates received by the Funds provides holders of the common stock with a potentially higher yield.

Defendant Fund Asset Management, L.P. ("FAM") serves as the Funds' investment adviser and is responsible for managing the

---

**1.** Although they are not named in the caption, the complaint also identifies as plaintiffs seven trusts that allegedly purchased shares of the Funds. Plaintiffs have brought their case as a putative class action, seeking to represent more than 100,000 investors in the Funds.

Funds' investment portfolios and providing administrative services to the Funds. Pursuant to written investment advisory agreements, the Funds pay FAM a fee for its services based upon a percentage of their weekly net assets. The MuniEnhanced Fund, Inc. prospectus discloses the advisory fee as follows:

> For the services provided by the Investment Adviser [FAM] under the Investment Advisory Agreement, the Fund will pay a monthly fee at an annual rate of .50 of 1% of the Fund's average weekly net assets (*i.e.*, the average weekly value of the total assets of the Fund, minus the sum of accrued liabilities of the Fund and accumulated dividends on the shares of preferred stock). For purposes of this calculation, average weekly net assets is determined at the end of each month on the basis of the average net assets of the Fund for each week during the month.

Compl. Ex. A, Tab 1 at page 20.[2]

Defendant Merrill Lynch Asset Management, L.P. ("MLAM") is an affiliate of FAM. MLAM and FAM are organized under the laws of Delaware and have their principal places of business in Plainsboro, New Jersey. Defendant Princeton Services, Inc. ("PSI"), a Delaware corporation with its principal place of business in Plainsboro, New Jersey, is the general partner of FAM and MLAM. PSI has a 1% interest in FAM and MLAM. Defendant Merrill Lynch and Co., Inc. ("ML & Co.") is FAM's and MLAM's sole limited partner and has a 99% interest in FAM and MLAM. ML & Co. is a publicly traded holding company that, through its subsidiaries and affiliates, provides investment, financing, insurance and related services on a global basis. ML & Co. is a Delaware corporation and maintains its corporate headquarters in New York City.

Defendant Arthur Zeikel is the President and a director of each of the Funds, President and Chief Investment Officer of MLAM and FAM, President and a director of PSI, and an Executive Vice President of ML & Co. Defendant Terry Glenn is the Executive Vice President of each of the Funds and Executive Vice President of FAM and MLAM.

Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated ("MLPF & S"), a securities broker-dealer and investment bank, served as the principal underwriter for the offerings of the Funds' common stock. MLPF & S also has entered into auction agent agreements with the Funds to sell the Funds' preferred stock. The 1994 MuniYield Insured Fund, Inc. annual statement discloses the fees generated by the preferred stock auctions as follows:

> The Fund pays commissions to certain broker-dealers at the end of each auction at an annual rate ranging from 0.25% to 0.375%, calculated on the proceeds of each auction. For the year ended October 31, 1994, MLPF & S, an affiliate of FAMI [FAM's predecessor], received $591,736 as commissions. Moyle Decl., Tab A at 16.[3]

A wholly owned subsidiary of ML & Co., MLPF & S is a Delaware corporation and maintains its corporate headquarters in New York City.

Plaintiffs brought this action to redress alleged violations of Sections 8(e), 34(b) and 36(a) and (b) of the Investment Company Act of 1940, 15 U.S.C. § 80a–1 *et seq.* ("ICA"). In their complaint, plaintiffs claim that defendants breached their disclosure obligations and fiduciary duties under the ICA and state law.[4]

Plaintiffs allege that defendants "failed to explicitly or sufficiently disclose" that the calculation of FAM's management fee would include assets purchased with the proceeds from sales of the preferred stock. Compl. ¶ 63(1). They claim that because the adviso-

---

2. The prospectuses for the other Funds contain virtually identical disclosures. *See* Compl. Ex. A, Tabs 2–7.

3. Each of the Funds' annual statements contains virtually identical disclosures. *See* Moyle Decl., Tabs B–H.

4. Plaintiffs filed their complaint in the United States District Court for the District of Massachusetts on June 21, 1996. Defendants moved to transfer venue to this District pursuant to 28 U.S.C. § 1404. On June 10, 1997, the Magistrate Judge granted defendants' motion. On July 15, 1997, the District Judge affirmed and ordered the transfer.

ry fee is measured as a percentage of all of the Funds' capitalization, including leverage, there is a strong financial incentive for FAM to keep the Funds fully leveraged at all times, even when it would be in the best interest of the investors to reduce or eliminate leverage.[5] They allege that the fee arrangement creates an inherent conflict of interest which was undisclosed in the Funds' prospectuses, filings with the SEC and its periodic reports to the shareholders. Compl. ¶ 63(2), (4). Plaintiffs also allege that defendants failed to disclose that the decision to issue preferred stock was subject to a conflict of interest because FAM's affiliate, MLPF & S, received fees from the sales of preferred stock. Compl. ¶ 63(3). In addition, they claim that defendants have continually misled investors as to the level of expense charged to the Funds, common stockholders. Compl. ¶ 68.

Plaintiffs seek compensatory damages and injunctive relief. They ask for an order permanently restraining and enjoining defendants from entering into any compensation arrangement between the Funds and any investment adviser under which "the compensation payable to such investment advisor is determined by, dependent upon, or measured or influenced by, the amount of financial leverage of its common equity investment maintained by such fund." Compl., Prayer for Relief ¶ 3.

### DISMISSAL PURSUANT TO RULE 12(b)(6)

A complaint must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted if the court finds "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In analyzing motions to dismiss, all allegations set forth in the complaint must be accepted as true and all reasonable inferences must be drawn in the plaintiff's favor. *Schrob v. Catterson,* 948 F.2d 1402, 1405 (3d Cir.1991). A court should allow a plaintiff to amend the com-

plaint instead of dismissing it where "a more carefully drafted complaint might state a claim upon which relief could be granted." *Friedlander v. Nims,* 755 F.2d 810, 813 (11th Cir.1985); *see Howze v. Jones & Laughlin Steel Corp.,* 750 F.2d 1208, 1212 (3d Cir. 1984).

A motion to dismiss which presents the court with matters outside the pleading which are not excluded is to be treated as a motion for summary judgment and analyzed pursuant to Rule 56. Fed.R.Civ.P. 12. In such circumstances, "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *Id.* However, undisputedly authentic documents upon which the plaintiff's claims are based may be considered without converting a motion to dismiss to a motion for summary judgment. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993), *cert. denied,* 510 U.S. 1042, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994); *In re Westinghouse Securities Litig.,* 90 F.3d 696, 707 (3d Cir.1996).

### ANALYSIS

Defendants move to dismiss the complaint in its entirety on the following grounds: 1) plaintiffs' claims under Sections 8(e), 34(b) and 36(a) are time-barred; 2) all material facts concerning the compensation arrangements between the Funds and FAM were adequately disclosed by defendants; 3) plaintiffs' breach of fiduciary duty claim under Section 36(a) was improperly brought directly rather than derivatively on behalf of the Funds; 4) plaintiffs fail to state a claim under Section 36(b) of the ICA, 15 U.S.C. § 80a–35(b), because they do not allege that FAM's advisory fees are excessive or disproportionate to the services rendered; and 5) as plaintiffs have no federal claims under the ICA, supplemental jurisdiction should not be exercised over the state law claims.

I. Defendants' Motion to Dismiss Plaintiffs' Claims Brought Pursuant to Sections 8(e), 34(b) and 36(a) of the ICA

Defendants argue that plaintiffs' claims under Sections 8(e), 34(b) and 36(a) of the ICA

---

**5.** Plaintiffs assert that FAM would lose approximately one-third of its advisory compensation if it eliminated leverage.

are time-barred. They contend that the applicable statute of limitations for these claims is one year from the date a plaintiff discovered or reasonably should have discovered the alleged misrepresentations or omissions, with an absolute limit of three years from the date an allegedly misleading document is filed with the SEC.

Plaintiffs argue that their claims are timely because the applicable limitations period should not be the one-year/three-year period advanced by defendants, but rather, the five-year limitations period for actions brought by the SEC under Section 36(a) of the ICA. Plaintiffs also assert that the limitations period for their state law breach of fiduciary duty claims should apply in the event the Court finds the five-year period is inapplicable. In the alternative, they argue that even if the one-year/three-year period applies, their complaint is nevertheless timely because their claims accrued when they purchased their shares in the Funds, not when the registration statements and prospectuses were filed with the SEC. In addition, plaintiffs maintain that their claims are timely because defendants committed continuing violations of the ICA through their failure to disclose, the alleged conflict of interest in reports to shareholders filed within and subsequent to the three-year period prior to the commencement of this action.

Section 8(e) of the ICA, entitled "Failure to file registration statement or omissions of material fact," provides in pertinent part:

> If it appears to the Commission that a registered investment company has ... filed such a registration statement or report but omitted therefrom material facts required to be stated therein, ... the Commission shall notify such company by registered mail or certified mail of the ... respects in which such registration statement or report appears to be materially incomplete or misleading. ... If such registration statement or report is not filed or corrected within the time so fixed by the Commission or any extension thereof, the Commission, after appropriate notice and opportunity for hearing, ... may by order suspend the registration of such company until such statement or report is filed or corrected, or may by order revoke such registration. ...

15 U.S.C. § 80a–8(e). Section 34(b) of the ICA provides:

> It shall be unlawful for any person to make any untrue statement of a material fact in any registration statement, application, report, account, record, or other document filed or transmitted pursuant to this Act or the keeping of which is required pursuant to section 31(a). It shall be unlawful for any person so filing, transmitting, or keeping any such document to omit to state therein any fact necessary in order to prevent the statements made therein, in the light of the circumstances under which they were made, from being materially misleading.

15 U.S.C. § 80a–33(b). Section 36(a) of the ICA, 15 U.S.C. § 80a–35(a), authorizes the SEC to bring an action to enjoin "any act or practice constituting a breach of fiduciary duty involving personal misconduct in respect of any registered investment company."

The foregoing sections of the ICA do not expressly provide for a private right of action and thus, do not contain an express statute of limitations for such actions. Section 36(a), however, authorizes the SEC to commence an action within five years of a violation of that provision, which protects against breach of fiduciary duty arising out of the personal misconduct of directors or investment advisers of a mutual fund. Plaintiffs argue that this five-year limitations period is applicable to their claims, citing *Lampf v. Gilbertson,* 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), in which the Supreme Court stated that where the claim asserted is "one implied under a statute that also contains an express cause of action with its own time limitation, a court should look first to the statute of origin to ascertain the proper limitations period." *Id.* 501 U.S. at 359, 111 S.Ct. 2773. Defendants argue that the five-year limitations period is inapplicable. They contend that the precise argument plaintiffs have asserted here has been rejected time and again by courts which have considered this issue.

Assuming that plaintiffs have an implied right of action under the provisions of the ICA referred to above, it is necessary to consider whether the five-year limitations period should apply to their claims in accordance with *Lampf.*[6] Pertinent and persuasive case law suggests that their claims must be dismissed as time-barred.

Plaintiffs have not cited and research has not revealed a case in which a court which recognized an implied right of action under the ICA applied the five-year limitations period for claims brought by the SEC under Section 36(a). The courts which have considered the issue have uniformly applied the one-year/three-year limitations period for claims under the Securities Exchange Acts of 1933 and 1934 to implied rights of action under the ICA. *See Blatt v. Merrill Lynch,* 916 F.Supp. 1343, 1351 (D.N.J.1996) (applying the one-year/three-year limitations period to claims under Section 7(d) of the ICA); *Friedlob v. Trustees of Alpine Mutual Fund Trust,* 905 F.Supp. 843, 855–56 (D.Colo.1995) (applying one-year/three-year limitations period to claims under Sections 8, 13, 15, 17 and 21 of the ICA); *Merine v. Prudential–Bache Utility Fund, Inc.,* 859 F.Supp. 715, 721–22 (S.D.N.Y.1994) (applying the one-year/three-year limitations period to a claim under Section 20(a) of the ICA); *In re ML–Lee,* 848 F.Supp. at 551 (applying the one-year/three-year limitations period to claims under Sections 17, 36(a) and 57 of the ICA); *In re Taxable Municipal Bond Securities Litig.,* 1992 WL 124783, at *3 (E.D.La. June 4, 1992) (applying one-year/three-year limitations period to claims under Sections 7 and 8 of the ICA), *aff'd,* 964 F.2d 1144 (5th Cir. 1992).

The reasoning of the foregoing cases is persuasive, and it is likely that the Court of Appeals in this circuit would hold that the one-year/three-year limitations period is applicable to plaintiffs' claims under Sections 8(e), 34(b) and 36(a). Plaintiffs argue that even if this period applies, their claims are timely because they accrued at the time they purchased their securities as would be the case with claims brought under Rule 10b–5. Claims of non-disclosure under Section 8(e), 34(b) and 36(a), however, are akin to false registration claims under Section 11 of the 1933 Act, as distinguished from claims for misrepresentations in connection with the purchase or sale of a security. The limitations period for Section 11 claims is found in Section 13 of the 1933 Act which provides:

> No action shall be maintained to enforce any liability created under section [11 or 12(2) ] of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence ... *In no event shall any such action be brought to enforce a liability created under section* [11 or 12(1) ] *of this title more than three years after the security was bona fide offered to the public* or under section [12(2) ] of this title[,] more than three years after sale.

15 U.S.C. § 77m (emphasis added).[7]

Section 11 claims have a three-year statute of repose which requires that claims concerning false or misleading registration statements be filed within three years from the time the securities were "bona fide offered to the public." *Id.* Securities are deemed to have been "bona fide offered to the public" on the effective date of the registration statement. *Finkel v. Stratton Corp.,* 962 F.2d 169, 173 (2d Cir.1992) (citing *Morse v. Peat,*

---

**6.** It is noted that there is authority recognizing the existence of an implied private right of action under Section 36(a) of the ICA. *See In re ML–Lee Acquisition Fund II, L.P.,* 848 F.Supp. 527, 542 (D.Del.1994). In addition, the Third Circuit Court of Appeals has stated that as a general matter private rights of action should be implied under the ICA. *Bancroft Convertible Fund v. Zico Inv. Holdings,* 825 F.2d 731, 733–36 (3d Cir. 1987) (considering whether private rights of action should be implied under the ICA and concluding that a private right of action should be implied under Section 12(d)(1)(a)).

**7.** A similar limitations provision is found in Section 9(e) the 1934 Act which provides: "[n]o action shall be maintained to enforce any liability created under this section, unless brought within one year after the discovery of facts constituting the violation and within three years after such violation." 15 U.S.C. § 78i(e); *see also Lampf,* 501 U.S. at 364 n. 9, 111 S.Ct. 2773 (adopting 9(e) to claims brought under Section 10(b)).

*Marwick, Mitchell & Co.,* 445 F.Supp. 619, 622–24 (S.D.N.Y.1977)); *see also Laven v. Price Waterhouse,* 1989 WL 129287 at *3 (D.N.J. June 28, 1989) (starting date for the three-year repose period for claims alleging omissions in registration statement is the date that the registration statement became effective).

Applying the foregoing analysis here, the most recent of the registration statements in question was filed in February 1992. Plaintiff did not commence this action until June 1996, more than four years later. Thus, plaintiffs' claims under Sections 8(e), 34(b) and 36(a) which concern the prospectuses and registration statements filed with the SEC are untimely under the three-year statute of repose.[8]

■ Plaintiffs argue that their claims under Sections 8(e), 34(b) and 36(a) should not be dismissed as untimely because defendants committed continuing violations of these provisions. They assert that defendants failed to adequately disclose FAM's incentive to leverage the Funds in reports to shareholders which were filed within the three-year period prior to the commencement of this action on June 21, 1996. They specifically refer to an October 31, 1994 report of the MuniYield Fund which they assert contains misleading financial information concerning that Fund's expense ratio. Plaintiffs also assert that, since the commencement of this action, reports were issued to the shareholders which contain misleading financial data. Plaintiffs claim that the defendants' reports to shareholders and regular filings with the SEC constitute fresh violations of the ICA.

Plaintiffs characterization the Funds' more recent reports as new violations is unpersuasive. They acknowledge that the true nature of their claims concerns the disclosure of the advisory fee arrangement in the prospectuses and registration statements which were filed with the SEC well over three years ago.

To allow plaintiffs to circumvent the three-year repose period due to the existence of subsequent reports which have only a collateral relationship to their non-disclosure claims would conflict with the purpose of the one-year/three-year statutory scheme. *See Lampf,* 501 U.S. at 361, 111 S.Ct. 2773.[9]

Moreover, the type of continuing wrong argument which plaintiffs advance here has been rejected by other courts when considering the timeliness of claims involving the registration of securities. *See Blatt,* 916 F.Supp. at 1352 (rejecting argument that continuing failure to register securities tolled the statute of limitations); *see also Seidel v. Lee,* 954 F.Supp. 810, 813–14 (D.Del.1996); *Slagell v. Bontrager,* 616 F.Supp. 634, 636–37 (W.D.Pa.1985), *aff'd,* 791 F.2d 921 (3d Cir. 1986). Thus, the allegation that defendants committed a continuing violation of ICA by failing to correct prior misleading statements in subsequent reports is unavailing to toll the statute of limitations. Plaintiffs' claims under Sections 8(e), 34(b) and 36(a) are time-barred and therefore, must be dismissed.

■ Assuming arguendo that plaintiffs' claims under Sections 8(e), 34(b) and 36(a) of the ICA were timely, these claims could not be asserted in addition to their Section 36(b) claim. While plaintiffs couch their claims in terms of both non-disclosure of the nature of the fee arrangement and breach of fiduciary duty, Section 36(b) expressly provides a right of action to redress breaches of fiduciary duty involving compensation or payments to an investment adviser. Accordingly, there is no need or basis for an implied right of action under Sections 8(e), 34(b) and 36(a) when plaintiffs' grievances fall within the private right of action provided for in Section 36(b). *See Merine,* 859 F.Supp. at 723 (Section 36(b) is the exclusive remedy for allegations concerning excessive advisory fees, requiring dismissal of related claims asserted

---

8. Even if plaintiffs were correct that their claims under the ICA are analogous to claims brought under Rule 10b–5, it is questionable whether this would change the outcome. It has been held that Rule 10b–5 claims accrue on "the date a defendant [made] an affirmative representation or, in the case of an omission, upon the date a duty to disclose the withheld information

[arose]." *In re Prudential Ins. Co.,* 975 F.Supp. 584, 605 (D.N.J.1996).

9. The one-year/three-year structure calls for "the inescapable conclusion that Congress did not intend equitable tolling to apply to actions under the securities laws." *Id.*

under other provisions of the ICA) (citing *Krinsk v. Fund Asset Mgmt., Inc.*, 875 F.2d 404, 413 (2d Cir.), *cert. denied*, 493 U.S. 919, 110 S.Ct. 281, 107 L.Ed.2d 261 (1989)); *Tarlov v. Paine Webber Cashfund, Inc.*, 559 F.Supp. 429, 437 (D.Conn.1983) (same).

II. *Defendants' Motion to Dismiss Plaintiffs' Claim Under Section 36(b) of the ICA*

■ As noted above, Section 36(b) expressly provides a private right of action to redress breaches of fiduciary duty concerning the compensation paid to investment advisers. Section 36(b) states, in relevant part:

> For purposes of this subsection, *the investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature* paid by such registered investment company, or by the security holders thereof, to such investment adviser or any affiliated person of such investment adviser. An action may be brought under this subsection by the Commission, *or by a security holder of such registered investment company on behalf of such company,* against such investment adviser, or any affiliated person of such investment adviser, or any other person enumerated in subsection (a) of this section who has a fiduciary duty concerning such compensation or payments, *for breach of fiduciary duty in respect to such compensation or payments* . . .

15 U.S.C. § 80a–35(b) (emphasis added). An action cannot be "brought or maintained against any person other than the recipient of such compensation or payment" and "[n]o award of damages [is] recoverable for any

period prior to one year before the action was instituted." 15 U.S.C. § 80a–35(b)(3).

Defendants maintain that plaintiffs' claim under Section 36(b) of the ICA must be dismissed because plaintiffs have failed to allege that the compensation which has actually been paid to FAM was excessive or disproportionate. They note that the Court of Appeals for the Second Circuit has held that a plaintiff must establish that an advisory fee is "so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining" in order to prevail on a claim under Section 36(b). *Gartenberg v. Merrill Lynch Asset Mgmt.*, 694 F.2d 923, 928 (2d Cir.1982) (citations omitted), *cert. denied*, 461 U.S. 906, 103 S.Ct. 1877, 76 L.Ed.2d 808 (1983); *see also Krinsk*, 875 F.2d 404.

Plaintiffs concede that they do not allege that the advisory fees which have been paid to FAM to date were excessive or disproportionate. They argue, however, that Section 36(b) does not contain such a requirement. Plaintiffs maintain that Section 36(b) provides for a private cause of action against a fund's adviser predicated upon an allegation of inadequate disclosure concerning the nature of the fee arrangement, citing *Galfand v. Chestnutt Corp.*, 545 F.2d 807 (2d Cir. 1976).[10] They also argue that Section 36(b) provides a cause of action to challenge the propriety of an advisory fee arrangement.

Section 36(b) of the ICA is not expressly limited to situations in which the advisory fees received by an investment adviser were excessive, disproportionate or otherwise unreasonable.[11] The statute encompasses the receipt of fees by an investment adviser in violation of the adviser's fiduciary duty, as it

---

**10.** In *Galfand* the Second Circuit found that an investment adviser violated Section 36(b) by failing to adequately disclose the negative factors associated with a decision to increase the fund's expense ratio, which resulted in an increase in compensation to the adviser. *Id.* 545 F.2d at 812–14. The Second Circuit noted that "Congress, in imposing a fiduciary obligation on investment advisers [under the ICA], plainly intended that their conduct be governed by the traditional rule of undivided loyalty implicit in the fiduciary bond" whereby "a self-dealing fiduciary owes a duty of full disclosure to the benefi-

ciary of his trust." *Id.* 545 F.2d at 811. Thus, under the Investment Company Act an investment adviser is under a duty of full disclosure where there is a possible conflict of interest between the adviser's interests and the interests of the Fund. *Id.* (citing *Fogel v. Chestnutt*, 533 F.2d 731, 745 (2d Cir.1975)).

**11.** Of course, when the fees are excessive or disproportionate to the services rendered, this clearly gives rise to a claim for breach of fiduciary duty under Section 36(b).

provides that "[n]o action shall be brought or maintained against any person *other than the recipient of such compensation or payments.*" 15 U.S.C.A. § 80a–35(3) (emphasis added). Moreover, Section 36(b) has been generally interpreted as providing a private right of action to recover excessive compensation paid to investment advisers. *See e.g., Krinsk,* 875 F.2d 404; *Gartenberg,* 694 F.2d 923; *Kalish v. Franklin Advisers, Inc.,* 742 F.Supp. 1222 (S.D.N.Y.1990), *aff'd,* 928 F.2d 590 (2d Cir.), *cert. denied,* 502 U.S. 818, 112 S.Ct. 75, 116 L.Ed.2d 48 (1991). Indeed, even *Galfand* involved a situation where the investment adviser received an increased fee as a direct consequence of his breach of fiduciary duty. *Galfand,* 545 F.2d at 812 (case remanded to the district court with instruction to award damages in the amount that the adviser was unjustly enriched under the voided contract). Thus, the question remains whether plaintiffs can maintain an action under Section 36(b) when they do not allege that FAM has in fact leveraged the Funds in order to collect a higher fee, but rather, claim that FAM failed to disclose its incentive to keep the Funds fully leveraged and challenge the lawfulness of the advisory fee arrangement.

Plaintiffs assert that an advisory fee arrangement such as that in question here, which bases the investment adviser's compensation in part on the amount of preferred stock in the portfolio, creates an inherent conflict of interest which cannot be cured even if adequately disclosed. If plaintiffs are correct, then the fees collected by FAM to date were the result of a breach of fiduciary duty in violation of Section 36(b). It would flow that such fees were excessive and recoverable to the extent permitted under that Section.

Determining whether this kind of fee arrangement constitutes a per se breach of fiduciary duty requires an exploration of the economic realities of such funds and market circumstances and practices. This determination cannot be made on the pleadings. A record will have to be made either on a summary judgment motion or at a trial. It would be inappropriate to dismiss the Section 36(b) claim at this time.

*CONCLUSION*

For the reasons set forth above, defendants' motion to dismiss plaintiffs' claims under Sections 8(e), 34(b) and 36(a) of the Investment Company Act of 1940 will be granted and defendants' motion to dismiss plaintiffs' claim under Section 36(b) of that Act and the state law claims will be denied. An appropriate order follows.