Jack GREEN, Individually and as Trustee, Lawrence P. Belden, Trustee, and Stanley Simon, Trustee, Plaintiffs,

v.

FUND ASSET MANAGEMENT, L.P., Merrill Lynch Asset Management, L.P., Merrill Lynch & Co., Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Princeton Services, Inc., Arthur Zeikel, Terry K. Glenn, Munienhanced Fund, Inc., Munivest Fund II, Inc., Muniyield Fund, Inc., Muniyield Insured Fund, Inc., Muniyield Insured Fund II, Inc., Muniyield Quality Fund, Inc., and Muniyield Quality Fund II, Inc., Defendants.

No. Civ. 97–3502(DRD).

United States District Court, D. New Jersey.

June 14, 1999.

Bruce I. Goldstein, Saiber, Schlesinger, Satz & Goldstein, LLC, Newark, NJ, Robert E. Sullivan, Sullivan, Weinstein & McQuay, Boston, MA, Laurence M. Johnson, Mahoney, Hawkes & Goldings, Boston, MA, for plaintiffs.

Paul A. Rowe, Alan S. Naar, Greenbaum, Rowe, Smith, Ravin, Davis & Himmel LLP, Woodbridge, NJ, James N. Benedict, Mark Holland, James F. Moyle, Sean M. Murphy, Rogers & Wells LLP, New York City, for defendants Fund Asset

Management, L.P., Merrill Lynch Asset Management, L.P., Merrill Lynch & Co., Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Princeton Services, Inc., Arthur Zeikel and Terry K. Glenn.

Robert J. Del Tufo, Skadden, Arps, Slate, Meagher & Flom LLP, Newark, NJ, Thomas J. Dougherty, James R. Carroll, Skadden, Arps, Slate, Meagher & Flom LLP, Boston, MA, for defendants MuniEnhanced Fund, Inc., MuniVest Fund II, Inc., MuniYield Fund, Inc., MuniYield Insured Fund, Inc., MuniYield Insured Fund II, Inc., MuniYield Quality Fund, Inc., and MuniYield Quality Fund II, Inc.

## OPINION

DEBEVOISE, Senior District Judge.

In this action, plaintiffs claim that defendants failed to disclose an allegedly improper advisory compensation arrangement for managing seven closed-end investment companies. Defendants jointly move for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) dismissing plaintiffs' state law claims for breach of fiduciary duty and deceit on the ground that they are preempted by Section 36(b) of the Investment Company Act of 1940, 15 U.S.C. § 80a–35(b) (the "ICA"). For the following reasons, the motion will be granted.

## BACKGROUND AND PROCEDURAL HISTORY

The factual background of this action was fully described in this Court's February 23, 1998 opinion, reported as *Green v. Fund Asset Mgmt., L.P.*, 19 F.Supp.2d 227 (D.N.J.1998). Only a brief summary is required here.

Plaintiffs' own common stock in seven leveraged, closed-end investment companies, defendants MuniEnhanced Fund, Inc., MuniVest Fund II, Inc., MuniYield Fund, Inc., MuniYield Insured Fund, Inc., MuniYield Insured Fund II, Inc., MuniYield Quality Fund, Inc., and MuniYield Quality Fund II, Inc. (collectively, the "Funds"). The Funds are managed by defendant Fund Asset Management, L.P. ("FAM"), a subsidiary of defendant Merrill Lynch Asset Management, L.P. ("MLAM"). The remaining defendants are corporate affiliates of FAM and two individual FAM executives.

The Funds are closed-end investment companies that seek to provide shareholders with income exempt from federal income taxes by investing in tax-exempt municipal bonds. The Funds initially offered shares of common stock, and invest the proceeds from the common stock offerings in long-term tax-exempt municipal bonds. In addition, the Funds seek to enhance the income to common shareholders through the use of leverage. The Funds leverage by issuing shares of preferred stock that pay dividends based upon prevailing short-term interest rates and investing the proceeds from the sales of the preferred stock offering in longer-term obligations that, under normal market conditions, pay higher rates. The spread between the dividends paid to the preferred stockholders and the longer-term rates received by the Funds provides holders of the common stock with a potentially higher yield.

Each Fund pays FAM a fee for managing the Fund, pursuant to a written investment advisory agreement. The fee is paid monthly at an annual rate of .50 of 1% of the Fund's average weekly net assets (i.e., the average weekly value of the total assets of the Fund, less the sum of the accrued liabilities of the Fund and accumulated dividends on the shares of preferred stock). Both the Funds' use of leverage and the calculation of the advisory fees are disclosed in the Funds' prospectuses.

Plaintiffs complain about the compensation the Funds pay FAM for investment advisory services. Plaintiffs allege that defendants: (1) failed to disclose that FAM would be compensated for managing all of the assets in the Funds' portfolios, including assets purchased with the proceeds from the sales of preferred stock; (2) failed to disclose that FAM has an

alleged conflict of interest because, during certain economic conditions when it would be in the Funds' interests to deleverage, FAM has an interest in keeping the Funds fully leveraged to maximize advisory fees; (3) failed to disclose that FAM had a conflict of interest in initially deciding to leverage the Fund, because FAM's affiliate, defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated ("MLPF & S") received underwriting fees for selling the preferred stock; and (4) concealed from investors the level of expenses borne by the Funds' common shareholders.

In their initial Complaint, plaintiffs alleged that defendants violated Sections 8(e), 34(b) and 36(a) and (b) of the ICA as well as state law.[1]  In *Green,* plaintiffs' claims under Sections 8(a), 34(b) and 36(a) were dismissed as untimely. 19 F.Supp.2d at 230–33. This Court also held that, assuming *arguendo* that those claims were timely, they were precluded by Section 36(b), which provides shareholders of investment companies with an express right of action to redress breaches of fiduciary duty "with respect to the receipt of compensation for services, or of payments of a material nature" by an "investment adviser or any affiliated person of such investment adviser." *Id.* at 233–34; 15 U.S.C. § 80a–35(b).[2]  As explained in *Green:*

While plaintiffs couch their claims in terms of both non-disclosure of the na-

1. Plaintiffs have since filed a First Amended Complaint, which does not allege any new facts.

2. Section 36(b) provides:
   (b) For the purposes of this subsection, the investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company, or by the security holders thereof, to such investment adviser or any affiliated person of such investment adviser. An action may be brought under this subsection by the [Securities and Exchange] Commission, or by a security holder of such registered investment company on behalf of such company, against such investment adviser, or any affiliated person of such investment adviser, or any other person enumerated in subsection (a) of this section [officer of registered investment company, director, member of any advisory board, depositor, principal underwriter] who has a fiduciary duty concerning such compensation or payments, for breach of fiduciary duty in respect of such compensation or payments paid by such registered investment company or by the security holders thereof to such investment adviser or person. With respect to any such action the following provisions shall apply:
   (1) It shall not be necessary to allege or prove that any defendant engaged in personal misconduct, and the plaintiff shall have the burden of proving a breach of fiduciary duty.
   (2) In any such action approval by the board of directors of such investment company of such compensation or payments, or

of contracts or other arrangements providing for such compensation or payments, and ratification or approval of such compensation or payments, or of contracts or other arrangements providing for such compensation or payments, by the shareholders of such investment company, shall be given such consideration by the court as is deemed appropriate under all the circumstances.
   (3) No such action shall be brought or maintained against any person other than the recipient of such compensation or payments, and no damages or other relief shall be granted against any person other than the recipient of such compensation or payments. No award of damages shall be recoverable for any period prior to one year before the action was instituted. Any award of damages against such recipient shall be limited to the actual damages resulting from the breach of fiduciary duty and shall in no event exceed the amount of compensation or payments received from such investment company, or the security holders thereof, by such recipient.
   (4) This subsection shall not apply to compensation or payments made in connection with transactions subject to section 80a–17 of this title, or rules, regulations, or orders thereunder, or to sales loads for the acquisition of any security issued by a registered investment company.
   (5) Any action pursuant to this subsection may be brought only in an appropriate district court of the United States.
   (6) No finding by a court with respect to a breach of fiduciary duty under this subsection shall be made a basis (A) for a finding of a violation of this subchapter for the purposes of sections 80a–9 and 80a–48 of

ture of the fee arrangement and breach of fiduciary duty, Section 36(b) expressly provides a right of action to redress breaches of fiduciary duty involving compensation or payments to an investment adviser. Accordingly, there is no need or basis for an implied right of action under Sections 8(e), 34(b) and 36(a) when plaintiffs' grievances fall within the private right of action provided for in Section 36(b).

19 F.Supp.2d at 233. In addition, this Court held that determination of whether the Funds' fee arrangements violated Section 36(b) required development of a factual record, and therefore concluded that "[i]t would be inappropriate to dismiss the Section 36(b) claim at this time." *Id.* at 235.

As a result, plaintiffs' surviving claims after *Green* are their breach of fiduciary duty claim under Section 36(b) and their state law claims for breach of fiduciary duty and deceit.[3] Defendants' pending motion seeks judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) dismissing plaintiffs' state law claims on the ground that they are preempted by Section 36(b).

### STANDARD FOR JUDGMENT ON THE PLEADINGS

■ A motion for judgment on the pleadings under Fed.R.Civ.P. 12(c) is the procedural vehicle to raise, after the close of the pleadings, a defense of failure to state a claim upon which relief can be granted. *Turbe v. Government of the Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991). When ruling on a Rule 12(c) motion, the court is required to view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the non-moving party. *Id.; Institute for Scientific Information v. Gordon and Breach, Science Publishers,*

*Inc.,* 931 F.2d 1002, 1004 (3d Cir.1991). The movant must establish that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law. *Institute for Scientific Information,* 931 F.2d at 1005; *Jablonski v. Pan Am. World Airways. Inc.,* 863 F.2d 289, 290–91 (3d Cir.1988); *Society Hill Civic Ass'n v. Harris,* 632 F.2d 1045, 1054 (3d Cir.1980). In this fashion the court may ensure that the rights of the nonmoving party are decided as fully and fairly as if there had been a trial. *Society Hill,* 632 F.2d at 1054.

### ANALYSIS

The standard for federal preemption was recently stated by the Third Circuit Court of Appeals as follows:

The Supreme Court has recognized three ways in which federal law may preempt, and thereby displace, state law: (1) "express preemption," (2) "field preemption" (which is also sometimes referred to as "implied preemption"), or (3) "conflict preemption." Express preemption arises when there is an explicit statutory command that state law be displaced.... Under field or implied-preemption principles, state law may be displaced if federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it. [S]tate law may be displaced under conflict preemption principles if the state law in question presents a conflict with federal law in one of two situations: when it is impossible to comply with both the state and the federal law, or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

---

this title, section 78o of this title, or section 80b–3 of this title, or (B) for an injunction to prohibit any person from serving in any of the capacities enumerated in subsection (a) of this section.

3. Because plaintiffs' Section 36(b) claim survived, their state law claims were not dismissed for lack of supplemental jurisdiction. *Green,* 19 F.Supp.2d at 235.

*Orson. Inc. v. Miramax Film Corp.,* No. 97–1994, 1999 WL 243617, at *9 (3d Cir. April 27, 1999) (citations and internal quotation marks omitted).

Section 36(b) of the ICA contains no express preemption of state laws relating to an investment adviser's breach of fiduciary duty, and defendants do not argue that plaintiffs' state law claims are displaced under field or implied preemption principles. Nor do defendants argue that compliance with both Section 36(b) and the state laws is impossible, one of the two grounds for conflict preemption to apply. As a result, the question here is whether conflict preemption arises because the state laws stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. Inquiry into the legislative history of Section 36(b) is therefore necessary to determine Congress's purposes and objectives in enacting that section.

■ Congress enacted the ICA in 1940 to regulate investment companies and the mutual fund industry because of their importance to the national economy. As stated in the ICA:

> [I]nvestment companies are affected with a national public interest in that, among other things . . . (5) the activities of such companies, extending over many States, their use of the instrumentalities of interstate commerce and the wide geographic distribution of their security holders, make difficult, if not impossible, effective State regulation of such companies in the interest of investors.

15 U.S.C. § 80a–1(a).

Congress added Section 36(b) to the ICA in 1970. The Senate Report accompanying the final version of the 1970 Amendments explained the purpose of amending the ICA to include Section 36(b):

> In the case of management fees, the committee believes that the unique structure of mutual funds has made it difficult for the courts to apply tradition-

al fiduciary standards in considering questions concerning management fees.

> Therefore your committee has adopted the basic principle that, in view of the potential conflicts of interest involved in the setting of these fees, there should be effective means for the courts to act where mutual fund shareholders or the SEC believe there has been a breach of fiduciary duty. This bill would make it clear that, as a matter of Federal law, the investment adviser or mutual fund management company has a fiduciary duty with respect to mutual fund shareholders. It provides an effective method whereby the courts can determine whether there has been a breach of this duty by the adviser or by certain other persons with respect to their compensation from the fund.

S.Rep. No. 91–184 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4897, 4898 (the "Senate Report"). The Senate Report proceeded to describe the structure of the mutual fund industry and the relationship between mutual funds and their investment advisers, and noted that the provisions contained in the ICA as originally passed in 1940 concerning the regulation of management fees and other charges to the investor "did not provide any mechanism by which the fairness of management contracts could be tested in court." *Id.,* at 4901. The report continued:

> Under general rules of law, advisory contracts which are ratified by the shareholders, or in some States approved by a vote of the disinterested directors, may not be upset in the courts except upon a showing of "corporate waste." As one court put it, the fee must "Shock the conscience of the court." Such a rule may not be an improper one when the protections of arm's-length bargaining are present. But in the mutual fund industry where, these marketplace forces are not likely to operate as effectively, your committee has decided that the standard of "corpo-

rate waste" is unduly restrictive and recommends that it be changed.

*Id.*

After noting that one year earlier the House had taken no action on a version of the bill which contained a provision mandating "reasonable" management fees, the Senate Report stated that in its proposed Section 36(b) the express ·statutory requirement of "reasonableness" was eliminated and a specific "fiduciary duty" was imposed on mutual fund investment advisers with respect to management fee compensation. *Id.* at 4902. As explained in the report:

This is in accordance with the fact that while the mutual fund is a separate organization, it is generally created and, subject to the supervision of the board of directors, is managed by the investment adviser. It also, is in accordance with the traditional function of the courts to enforce such fiduciary duties in similar type relationships.

Your committee believes that the investment adviser should be a fiduciary of the fund in such matters as the handling of the fund's assets and investments. Therefore, we have added a new section 36(b) to the Investment Company Act to specify that the adviser has a fiduciary duty with respect to compensation for services or other payments paid by the fund or its shareholders to the adviser or to affiliated persons of the adviser.

*Id.*

In codifying in Section 36(b) the fiduciary duty owed by a mutual fund's investment adviser Congress included several procedural restrictions on actions for breach of fiduciary duty brought under that section. As described in the Senate Report:

Section 36(b) authorizes an action only against the recipient of the compensation or payments. Damages may be recovered only from a recipient of the payments and are not recoverable for any period prior to 1 year before the action was instituted. An award of damages against any recipient is limited to actual damages resulting from the breach of fiduciary duty and may not exceed the amount of the payments received by such recipient from the investment company or its security holders. Action under this section may be brought only in an appropriate Federal court.

*Id.* at 4911. In addition, under Section 36(b) the plaintiff i) is not entitled to a jury trial on its breach of fiduciary duty claim, ii) may be only the SEC or shareholders of the fund rather than the fund itself as in a common law derivative suit and iii) has the burden of proving that the adviser breached its fiduciary duty.

Defendants argue that Section 36(b) preempts plaintiffs' state law claims because its purpose demonstrates Congress's intent to preempt state law and its statutory structure conflicts with plaintiffs' state law claims. Plaintiffs respond that the legislative history of the ICA indicates not that Congress intended to supplant existing state law remedies but rather that Congress concluded that existing remedies were inadequate and should be supplemented by the additional remedy created by Section 36(b). They also assert that their state law claims for breach of fiduciary duty and deceit do not conflict with the statutory structure of Section 36(b).

Initially, it should be noted that the precise preemption issue presented here apparently is one of first impression in the federal courts and that consequently none of the cases cited either by plaintiffs or defendants to support their arguments respectively against and for preemption are directly on point. For instance, while many of the cases cited by defendants make it clear that Section 36(b) is the exclusive remedy for grievances concerning mutual fund service fees with respect to other sections of the ICA, it does not necessarily follow that Congress therefore intended the remedy provided in Section

36(b) to preempt state law.[4] In addition, defendants cite the unpublished decision in *Batra v. Investors Research Corp.*, No. 89–0528–CV–W–6, 1990 WL 165242 (W.D.Mo. May 3, 1990), and a subsequent unpublished decision in a related case, *Batra v. Investors Research Corp.*, No. 91–0190–CV–W–6, 1992 WL 280790 (W.D.Mo. Apr. 2, 1992) (*"Batra II"*), as authority for their preemption argument, yet these decisions concern the exercise of pendent jurisdiction. Neither decision expressly holds that Section 36(b) preempts state common law remedies.[5] Similarly, plaintiffs cite numerous cases which stand for the unremarkable proposition that in general the federal securities laws do not preempt state law.[6] These cases all recognize, however, that preemption is proper where the state law conflicts with or impairs the federal regulatory scheme, and thus this Court is left with the task of determining whether the regulatory scheme of Section 36(b), the particular section of the ICA at issue here, would be impaired by allowing plaintiffs' common law claims to proceed.

**4.** *See, e.g., Green*, 19 F.Supp.2d at 233–34; *Krinsk v. Fund Asset Mgmt., Inc.*, 875 F.2d 404, 413 (2d Cir.), *cert. denied*, 493 U.S. 919, 110 S.Ct. 281, 107 L.Ed.2d 261 (1989) (rejecting claim under Section 12(b) for wrongful distribution fees as an improper attempt to circumvent the specific procedural limitations of Section 36(b)(3)); *Merine v. Prudential–Bache Utility Fund, Inc.*, 859 F.Supp. 715, 722–23 (S.D.N.Y.1994) (dismissing claims under Sections 1(b)(2), 15, 17(h) and 17(i) because the "exclusive remedy provided by the ICA for payment of excessive service fees from a mutual fund is § 36(b)," and recognizing that otherwise a plaintiff would be able to "circumvent one of the specific procedural limitations Congress enacted as part of § 36(b)"); *Batra v. Investors Research Corp.*, No. 89–0528–CV–W–6, 1990 WL 165242, at *3 (W.D.Mo. May 3, 1990) (implied claim for conversion under Section 37 not available in light of express cause of action provided under Section 36(b)); *Tarlov v. Paine Webber Cashfund, Inc.*, 559 F.Supp. 429, 437 (D.Conn.1983) (dismissing claims challenging management fees under Sections 1(b)(2), 15(a), 15(b) and 36(a) because "Section 36(b) affords the complete remedy intended by Congress").

**5.** *See Batra*, 1990 WL 165242, at *5–*6 (declining, in initial determination made *sua sponte* without benefit of briefing, to exercise pendent jurisdiction over state law claims because "[b]y limiting the parties against whom relief may be sought, by limiting the type and amount of relief available, and by limiting the forum to the federal courts, with no right to a jury trial, it appears that Congress intended for § 36(b) to provide a streamlined cause of action to address a particular type of wrong"); *Batra II*, 1992 WL 280790, at *6 n. 3 (dismissing plaintiff's subsequent attempt to reassert state law claims for failure to make the requisite pre-suit demand and noting in *dicta*, "The defendants also contend that Section 36(b) preempts the plaintiff's state law claims. Although the court does not rely on this issue in granting dismissal, a review of the briefing and authorities relied upon suggests that Section 36(b) preempts state law claims relating to breach of fiduciary duty with respect to excessive management fees...."). *See also Tarlov*, 559 F.Supp. at 441 (finding no basis for exercise of pendent jurisdiction over state law claims because defendant was excluded from liability under Section 36(b), and noting in *dicta* that "[i]t may be that any such parallel common law action has been preempted by Section 36(b))."

**6.** *See, e.g., Chanoff v. U.S. Surgical Corp.*, 857 F.Supp. 1011, 1015–16 (D.Conn.), *aff'd*, 31 F.3d 66 (2d Cir.), *cert. denied*, 513 U.S. 1058, 115 S.Ct. 667, 130 L.Ed.2d 601 (1994) (finding in case where state law fraud claims were asserted in conjunction with federal securities claims that plaintiff's common law claims are not *per se* preempted but concluding after performing preemption analysis that the state claims are preempted to the extent they conflict with the federal regulatory scheme); *McCarthy v. PaineWebber, Inc.*, 618 F.Supp. 933, 943 (N.D.Ill.1985) ("There is no logical reason not to permit the range of traditional common law actions to be expanded by state statute, so long as the [Commodity Exchange] Act's regulatory scheme is not impaired as a consequence"); *Khalid Bin Talal Bin Abdul Azaiz Al Seoud v. E.F. Hutton & Co.*, 720 F.Supp. 671, 679 (N.D.Ill.1989) ("As a general matter, the establishment of a federal regulatory scheme—even one that comprehensively addresses an important social concern—does not automatically preempt the applicable state common law causes of action. Courts instead must decipher first whether the federal enactment at issue plainly intended to abolish common law rights and, if not, whether their retention would render the regulatory scheme ineffective").

After careful consideration of the legislative history, statutory language, case law and the arguments of the parties, this Court concludes that Section 36(b) preempts plaintiffs' state law breach of fiduciary duty and deceit claims. As is evident from the legislative history, Congress enacted the ICA because it had concluded that the nationwide activities of investment companies called for federal regulation and, more relevant to the issue at hand, enacted Section 36(b) because the existing remedies for improper compensation arrangements had been ineffective. While plaintiffs argue that notwithstanding Congress's intent to provide a federal remedy for excessive advisory fees their relief need not be confined to the remedy expressly created by Congress in Section 36(b), this Court does not agree.

The Senate Report reveals that the impetus for the enactment of Section 36(b) was the overall ineffectiveness of prior remedies for improper compensation arrangements and the state courts' struggle to "apply traditional fiduciary standards in considering questions concerning management fees." Senate Report at 4898. Indeed, the Senate Report noted that the bill was drafted to provide an "effective means for the courts to act where mutual fund shareholders or the SEC believe there has been a breach of fiduciary duty" and to "make it clear that, *as a matter of Federal law,* the investment adviser or mutual fund management company has a fiduciary duty with respect to mutual fund shareholders." *Id.* (emphasis added). According to the Senate Report, the bill was drafted to "provide[ ] an effective method whereby the courts can determine whether there has been a breach of this duty by the adviser or by certain other persons with respect to their compensation from the fund." *Id.* Because of the Senate Report's emphasis on curing the ineffectiveness of the existing remedies by creating a new federal claim for breach of fiduciary duty that could only be brought in the federal courts, it can reasonably be concluded that Congress intended Section 36(b) to re-

place, rather than supplement, these ineffective remedies.

This conclusion is supported by the fact that Section 36(b)'s liability scheme includes several narrowly tailored procedural restrictions that conflict with plaintiffs' common law claims for breach of fiduciary duty and deceit. As discussed above, Section 36(b) limits the parties against whom relief may be sought, limits the type and amount of relief a shareholder may recover, imposes upon the plaintiff the burden of proving that the adviser breached its fiduciary duty, limits the plaintiff to the forum of federal court, creates no right of action for the fund itself and limits the plaintiff to a non-jury trial. Each of these limitations is at odds with plaintiffs' common law claims.

First, unlike plaintiffs' common law claims Section 36(b) expressly limits the parties against whom relief may be sought. The statute authorizes private actions only against the "recipient" of the compensation and expressly prohibits an action against any other party. 15 U.S.C. § 80a–35(b)(3). Plaintiffs have named as defendants in this action not only FAM, which received the advisory compensation, but also the Funds themselves and their officers and directors.

Second, Section 36(b) limits the type and amount of relief a shareholder may recover. Damages recoverable under Section 36(b) are expressly limited to "actual damages." *Id.* Further, a shareholder may not sue for any advisory fees paid more than one year before the filing of the complaint. *Id.* This one-year statute of limitations is far shorter than the six-year statute of limitations for common law breach of fiduciary duty claims available under New Jersey law. *See* N.J.S.A. 2A:14–1.

Third, Section 36(6) imposes upon the plaintiff the burden of proving that the adviser breached its fiduciary duty. 15 U.S.C. § 80a–35(b)(1). This provision is in sharp contrast to the established common law rule requiring the fiduciary to justify

its conduct. *See, e.g., Geddes v. Anaconda Copper Mining Co.,* 254 U.S. 590, 599, 41 S.Ct. 209, 65 L.Ed. 425 (1921). Regarding Congress's shifting of the burden of proof to plaintiffs challenging advisory fees, it has been noted that:

> At common law it was incumbent on the fiduciary to justify his transaction with his *cestui.* Under this statute the burden is reversed. Indeed, the Report by the House Committee even considered a burden of proof "by clear and convincing evidence ... in order to attempt to eliminate nuisance suits designed to harass defendants." H.R.Rep. No. 1382, 91st Cong., 2d Sess. 38 (1970).

*Gartenberg v. Merrill Lynch Asset Mgmt., Inc.,* 528 F.Supp. 1038, 1044 n. 6 (S.D.N.Y. 1981), *aff'd,* 694 F.2d 923 (2d Cir.1982), *cert. denied sub nom. Andre v. Merrill Lynch Ready Assets Trust,* 461 U.S. 906, 103 S.Ct. 1877, 76 L.Ed.2d 808 (1983).

Fourth, plaintiffs suing under section 36(b) are limited in their forum; unlike suits for common law breach of fiduciary duty and deceit suits under Section 36(b) must be brought in federal court. 15 U.S.C. § 80(a)–35(b)(5).

Fifth, unlike a common law derivative suit, Section 36(b) creates no right of action for the fund itself. Only the SEC and shareholders of the fund may enforce the adviser's fiduciary duty. 15 U.S.C. § 80(a)–35(b).

Finally, under Section 36(b) plaintiffs are not entitled to a jury trial on their breach of fiduciary duty claims. "[A] claim under section 36(b), even when labeled as one for damages, ordinarily should be treated as an equitable claim not for a jury." *Krinsk v. Fund Asset Mgmt., Inc.,* 875 F.2d 404, 414 (2d Cir.), *cert. denied,* 493 U.S. 919, 110 S.Ct. 281, 107 L.Ed.2d 261 (1989).

In light of the foregoing, allowing plaintiffs' inconsistent state law parallel actions would frustrate the statutory scheme purposefully put into place by Congress in Section 36(b). As a result, their state law claims will be dismissed on the ground that they are preempted by Section 36(b).

Finally, the Order implementing this Opinion will grant plaintiffs permission to immediately file an interlocutory appeal should they choose to do so. Under 28 U.S.C. § 1292(b):

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. § 1292(b). *See also* Fed. R.App.P. 5. On its face, therefore, 28 U.S.C. § 1292(b) requires the Court to find that: (i) the order involves a controlling question of law (ii) as to which there is a substantial difference of opinion and that (iii) an immediate appeal may materially advance the ultimate purpose of the litigation. *See Katz v. Carte Blanche Corp.,* 496 F.2d 747, 754 (3d Cir.), *cert. denied,* 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974) (requiring that the district judge certify that the order satisfies all three criteria).

This Court is convinced that all three criteria are satisfied here. There is no question that the preemption issue presented in this action is a controlling issue of law and that immediate resolution of this issue by the Third Circuit would advance the ultimate termination of the liti-

gation. Moreover, given that this issue is one of first impression in the federal courts, there are substantial grounds for difference of opinion regarding whether Section 36(b) of the ICA preempts state law claims for breach of fiduciary duty and deceit. *See, e.g., District 65 Retirement Trust for Members of the Bureau of Wholesale Sales Representatives v. Prudential Securities, Inc.,* 925 F.Supp. 1551, 1571 (N.D.Ga.1996) (amending order, which held that plaintiffs' state law claims were preempted by ERISA because of allegations in complaint that defendants acted as fiduciaries in their dealings with plaintiffs, to certify the preemption issue for interlocutory appeal). The Court sees no reason to stay the proceedings pending any interlocutory appeal taken by plaintiffs. Thus, the preemption issue here will be certified for interlocutory appeal and the proceedings will not be stayed.

### CONCLUSION

For the reasons set forth above, defendants' motion will be granted and plaintiffs' state law claims will be dismissed. An appropriate order follows.